IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### FEBRUARY TERM, 1875.

---

THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD·
COMPANY ADS. CORNELIUS HANNON.

1. By force of the statute, a riparian owner, when he extends his shore front, must, if the high water line is substantially a straight line, so extend his side lines as to make them rectangular with such high water line.
2. When the high water line is not straight, the extension of the shore front must be divided proportionately among the riparian owners.

---

In ejectment.   On rule to show cause.

Argued at November Term, 1874, before BEASLEY, Chief Justice, and Justices DALRIMPLE, DEPUE and SCUDDER.

For the plaintiff, *Coult.*

For the defendants, *T. N. McCarter.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   This is an action of ejectment, the premises in dispute being a portion of the extensions of riparian land, by docking out into the Passaic river.   The

extension in question was made by a former land owner, under whom the plaintiff derives his title. The defendants own the contiguous lot, which is also riparian land. The principal legal question presented by the case is, the important one, with respect to the direction in which the riparian owner may extend his front into tide water. In the present case, the defendants insist that the course of such extension must be that given by a protraction of the side lines of the lot of the plaintiff in the same course in which they run to the river. The adoption of such a method would give the small, triangular lot in dispute, to the defendants. This was not the rule upon which the verdict is founded. At the trial, the rule applied was, that the line of extension was "to be got by ascertaining what the original high water mark on the shore was, and then extending the lines at right angles from that line."

In its application to the facts of the case on trial, it seems to me that the rule thus propounded was clearly correct. Along that part of the shore embracing the premises in question, the high water line was practically straight, and wherever this is the case, the side lines of the land reclaimed must be at right angles to such base line. This rule inevitably results from the fact that this right of reclamation is altogether the creature of the statute. The riparian owner has no control over such right, which is an incident which the law itself annexes to the property. In the ascertainment of such an incident, it is not of the least importance in what direction the owner of the upland has seen fit to run the lines of his property to the shore. Whether such lines approach the water in a course rectangular to the shore line, or run obliquely to such base, the right of riparian extension is unaffected by the difference. In both cases, the statute is supreme, which declares "that it shall be lawful for the owner of lands situate along or upon tide waters, to build docks or wharves upon the shore in front of his lands, and in other ways to improve the same; and when so built upon or improved, to appropriate the same to his own exclusive use."

(*Nix. Dig.* 1025.) This is the legislative grant to the owner of the shore front, and the right given is clearly defined in it. The privilege conferred is not to extend the land into the water generally, but to extend it in a particular direction, that is, in front of the land to which the privilege attaches. Nor is the privilege granted to a single individual, but on the contrary, it is a franchise granted to a class, so that no one of such class can claim a right paramount to that of any of the others. Every owner of a shore front has the right to extend such front on to the public domain, within certain defined limits, and from this parity of interest, it necessarily follows that no particular proprietor can exercise his privilege, except in harmony with the equal rights of the rest of his class. This being the sole origin and title to the right in question, it becomes at once obvious that the location of the boundary lines of the tracts running to the shore, are to be thrown out of the account, in settling the legal course or extent of the extension of the upland below the high water line. That extension, the statute peremptorily declares, must be "in front of the riparian land." The result of this doctrine is, that where the high water shore line is straight, the side lines of the extension must be rectangular to such base line ; any other course would necessarily infringe on the rights of the owner of the contiguous land on the one side or the other, and this, in no instance, would seem admissible, except where, from the conformation of the shore, it is impossible for each owner to have an extension of his entire shore front. In the present case, the jury at the trial was instructed to find the straight high water line, disregarding small irregularities in the conformation of the shore, and to run from the line so found, rectangular lines from each corner upon the shore of the plaintiff's land, and in this manner ascertain his right in the river front. As before stated, this instruction, in view of the facts in evidence, was a correct statement of the legal rule.

From the foregoing exposition of the statute it will appear that in all cases in which the high water line is straight, there

can be no difficulty in fixing the extent and course of the extension to be assigned to each shore front. But where this is not the case, such allotment becomes a proceeding, in many cases, of great complexity, embracing the adjustment of conflicting rights and raising questions both intricate and delicate. This embarrassment grows out of the fact that the formation of the shore is often such that it is not possible for each shore owner to take to himself the land in front of his shore line. Where there are deep indentations or abrupt projections along the shore the rights of the land owners inevitably conflict; there is not a sufficient scope of water front to give to each his full share, and as their rights are equal, such rights must be conciliated by an equitable adjustment. This can be done only by allotting to each land owner an allotment of the water front, proportionable to the extent of his riparian proprietorship. This is the cardinal principle, and it legitimately results from the perfect equality of rights which the statute establishes in this class of persons. I have examined this subject with attention, and it does not seem to me that much more can be done for its practical elucidation, than the laying down of this general rule. It is not probable that any precise formula, applicable to every case, can be devised. The principle to work by is, that when practicable, each owner is to have his full shore front; when this is not practicable, he is to have his ratable part of such front. I do not see how the rule can be further specialized. Such attempts have, in various cases, been made by the judicial tribunals of some of the states, and some of the rules thus introduced are well worthy of attention, as they are seemingly applicable to a numerous class of situations. The question has arisen several times in Massachusetts, under a colonial ordinance, which gives to the owner of land bordering on a cove where the sea ebbs and flows, a right to the contiguous flats to the low water mark. One of these cases is that of *Rust* v. *Boston Mill Corporation*, 6 *Pickering* 158, in which the rule was laid down that, under the ordinance just referred to, the owner could not necessarily claim the flats in the direction of the exterior

lines of his upland, but only in the direction towards low water mark from the two corners of his upland at high water mark.    There is, also, in the opinion, a rule propounded for the allotment of the flats among the various land owners in front of a circular cove, which, in practice, may be found useful, but with respect to which it is at present only pertinent to denote that the rule is founded in the principle that the partition is to be ratable, when the situation is such that each owner cannot have his complement in proportion to his water front.    The rule approved in this case was subsequently affirmed in the case of *Sparhawk* v. *Bullard*, 1 *Metc.* 95.    In both these cases it is admitted that no general rule, applicable in every instance, can be framed, a result which is thus stated by Chief Justice Shaw, in the case of *Walker* v. *The Boston & Maine Railroad*, 3 *Cushing* 22: "No general rule of division has been laid down, and, perhaps, from the nature of the case, none can be laid down.  Many coves, inlets and estuaries of rivers, are so irregular and various in outline, and so traversed by crooked and meandering creeks and channels, from which the sea does not ebb, that it is utterly impossible to apply to them any of the rules that have been applied to other cases. Such, to a considerable degree, is the character of the case in question, though far from being as irregular as many others. The most one can hope to do is, to take the colony ordinance of 1641, and to apply it according to its true spirit, and, by as near an approximation as practicable to the rules which have been judicially established, to lay down such a line of division as to give to each riparian proprietor his fair and equal share."    In Maine, the judicial course has been the same as that just indicated, and the courts in that state, also, have expressed their conviction of the impossibility of establishing any special rule by which every right of this kind can be admeasured.    *Emerson* v. *Taylor*, 9 *Greenl.* 42.

There was a second question which was somewhat pressed in the argument of the counsel of the defendants.    It related to the construction of the deed of conveyance, under which the plaintiff claimed his title to the premises in dispute.    The

contention was that the description in this deed does not carry the land conveyed to the river, but stops short of that point. It was shown that by locating the land described by the courses and distances of the description would not take the tract to the river, but would fall considerably short of that point. The old river front had been at the point thus reached, but the land reclaimed in front of the premises, was not embraced in the measured distance. The part exterior to this measurement comprised the land in controversy, and the defendants, on the ground thus assigned, insisted that the plaintiff had failed to show title to it. But it seems to me that this position has no basis in legal principles. The rule is entirely established that if the description of the measurements of the property does not coincide with the position of the monuments referred to, the latter, as the unmistakable evidences of intention, must prevail. In the present case the description carries the property to the "Passaic river, and thence along said river the several courses thereof." In view of such a description, can there be any question as to what the understanding of the parties to this instrument was? Who can doubt that the river was, on this side, to be the boundary of the land. To adopt the contention of the defence on this point, would involve the reversal of every decision heretofore made upon this subject. Nor does the circumstances that at an antecedent period the river front had occupied a different position, appear to affect the question, because the description of a conveyance, unless a different aspect is clearly manifested, refers to the monuments existing at the time of its execution. The objection, in my opinion, has no force, and was rightly dealt with at the trial.

With respect to the merits of the case, I think the verdict cannot be disturbed. The facts in proof do not make a case so clearly in favor of the defence as to warrant the interference of the court with the action of the jury.

Let the rule be discharged.