## NATHAN WOLFE v. ELI FREDERICK.

*Replevin—Proof of prior fraudulent sale, and subsequent admixture of goods, admissible to show fraudulent character of business subsequently carried on by purchaser, as agent of his vendor.*

Defendant, as sheriff, attached a stock of goods in the possession of one Markson, at the suit of his creditors. Plaintiff, claiming to own the goods, brought this suit. On the trial testimony was admitted on the part of defendant showing a pretended sale to plaintiff, a few months before, of a similar stock of goods by Markson, who was then doing business in his own name at Eaton Rapids and soon after removed to Big Rapids and continued to carry on the same business, as A. Markson, agent, receiving the proceeds, plaintiff being in Canada. The sale at Eaton Rapids had been held fraudulent as against Markson's creditors, and the court left it for the jury to find from all of the testimony whether the business at Big Rapids was a continuation of that at Eaton Rapids, and carried on in fraud of Markson's creditors.

*Held,* that there was no error in the course pursued, and that there were facts enough to warrant the jury in believing the stock of goods attached, the outcome of the old stock, and that plaintiff was a mere man of straw and Markson, the real owner.

Error to Mecosta. (Fuller, J.) Argued January 5, 1886. Decided January 20, 1886.

Replevin. Plaintiff brings error. Affirmed.

*Palmer & Palmer* and *M. Brown,* for appellant:

The court erred in instructing the jury that if they should find the Eaton Rapids sale fraudulent, as to creditors of Markson, and that other goods were bought and mixed with those embraced in that sale by Markson and plaintiff, so as to render them indistinguishable then the entire stock would

be considered as being a part of the original stock, and liable accordingly, because it relates to a matter on which no proof was offered, and if there had been the instruction, as given, is not the law: *Stephenson v. Little*, 10 Mich. 434; *Cadwell v. Pray*, 41 Mich. 311; Drake on Attachment, 4th ed. § 199; *Smith v. Sanborn*, 6 Gray, 134; *Carlton v. Davis*, 8 Allen, 96.

*Glidden & Marsh* and *John M. Corbin*, for defendant:

If the goods which ought to have gone to the creditors of Markson were by the plaintiff and Markson so mixed with goods afterwards purchased as not to be distinguishable, the whole became liable to satisfy the said creditors: *Stephenson v. Little*, 10 Mich. 433; *Wetherbee v. Green*, 22 Mich. 317; *Johnson v. Ballon*, 25 Mich. 461; *The Ile Royal Min. Co. v. Hertin*, 37 Mich. 332; *Cadwell v. Pray* 41 Mich. 307.

CAMPBELL, C. J. The plaintiff brought replevin against defendant, as sheriff of Mecosta county, for a stock of goods which had been seized as the property of one Abram Markson. The goods were and always had been in Markson's possession, and he was carrying on business under the name of "A. Markson, Agent." It is claimed by plaintiff that the business was his business, in charge of Markson as his agent. It is claimed by defendant that as against Markson's creditors this apparent arrangement was a fraud, and that in fact the concern was Markson's, and the agency named was used to cover it up. The case has been twice tried with similar results, the jury finding that defendant's levy was legal. Plaintiff has brought the case up on exceptions, which are all based on charges and refusals to charge, except one against allowing a witness to make a computation of the amounts of certain judgments, which seems to us to need no attention; and one to the admission of testimony concerning other goods than those levied on, which is covered by the same rules as the exceptions to the charge, and need not be referred to separately.

Most of the controversy in this Court refers to the action of the court in allowing the jury to consider certain previous dealings which have been found by verdicts to have been

fraudulent, and which it is admitted were so, whereby a stock
of goods formerly owned in Eaton county by Markson were
transferred to plaintiff to defraud his creditors.    This fraud,
and its bearing on the subsequent transactions under the
claim of agency, had a  large part in the controversy before
the jury.    All of the assignments of error relied on are
based on the reception of these matters into the issue.    So
far as the various badges of fraud in the Eaton Rapids trans-
action are concerned, there can be no doubt they were prop-
erly admitted and charged upon, if that transaction was
admissible at all ; and inasmuch as that fraud has been judi-
cially ascertained, no damage could be done by any charges
which bore upon the facts from which fraud might be
inferred.    We find no errors on this branch of the case, but
we do not deem it necessary to dwell upon it.    If fraud
existed, and was a fixed fact, it is not of much consequence
to consider how far the instructions bearing on the evidence
here were correctly given ; but we think they were correct.

A brief outline of the facts shown will be enough to enable
us to test the correctness of the course on the trial.    In the
early part of 1882 Markson had a large stock of clothing at
Eaton Rapids, worth nearly $6,000.    On the thirteenth day
of January, 1882, he went through the form of selling them
to his brother-in-law, the plaintiff, at sixty cents on the dol-
lar, or $3,486.23.    At this time he owed a little over $3,000.
Wolfe, the plaintiff, who was barely out of his minority, if
not a minor, was living in Canada, and does not appear to
have had any considerable capital.    It is claimed he paid
$140 in cash, and gave his notes for the balance at three, six,
nine and twelve months.    The goods were shortly after
moved to Big Rapids, in Mecosta county ; and Markson con-
tinued to manage the business and receive the proceeds in the
name of " A. Markson, Agent," up to the levy in this case.
Plaintiff during this time was in Canada, and did nothing
about the business, except as he claims to have remitted some
money and received periodical statements.    All of this is in
controversy.    He claims that the goods seized by defendant
were exclusively goods bought by Markson as his agent, and
on his responsibility.

The court below limited the right of defendant by the condition that the goods levied on, if the business was Wolfe's, must have been a part of the old stock or its proceeds, or so mixed up with old goods as to be indistinguishable. The charge was quite as broad as could be asked in favor of Wolfe's right to employ Markson to do business as his agent, and in favor of any *bona fide* ownership of his.

We can see no reason why all the testimony received was not relevant. The business began, if this testimony was true, in a purpose to defraud creditors, and the agency, whatever it was, was in the management of a stock which creditors had a right to levy on. Under such circumstances, the precise time when the business ceased to be dishonest, and the stock became purged of its taint, if it ever became so, was an interesting inquiry. In the ordinary course of business, it would be difficult to find a continuous trade which had not some relation with the original stock, or its proceeds; and the jury were not bound to accept the statements of parties who were unquestionably guilty of fraud in the outset, in spite of circumstances which discredited them. We have no hesitation in holding that there were facts enough to warrant the jury in treating the stock levied on as the outcome of the old stock, and in believing that Wolfe was a mere man of straw and Markson the real owner. It is certainly possible, in such a stock, to intermingle articles so that no one could distinguish them who had not private information, and there was nothing out of the way in so holding.

If this subject was open to consideration in this suit, then the entire body of errors assigned and argued is disposed of. We think it was manifestly right to allow it, and that the court took great pains to avoid any instructions of which plaintiff could complain.

We have found nothing in the record which indicates any illegality or injustice. The verdict was warranted by the proofs, and the proofs were relevant.

As no errors are assigned on the record proper, we do not consider the suggestions on that head.

The other Justices concurred.