GEORGE W. MEAD v. DURELLE F. GLIDDEN AND EDWIN J. MARSH.

[See 52 Mich. 529; 59 Id. 246.]

*Practice in circuit courts—Bill of particulars—Amendment—Attorney's fees—Payment.*

1. Allowing an amendment to a bill of particular during the trial, by increasing the amount of a specific claim of the defendants, is in the discretion of the court.

2. In this case it is held that there was some evidence before the jury in support of defendants' claim that they paid the money sued for by an arrangement between the plaintiff, themselves, and the payee, and that the charge in that regard was supported by the evidence, and was fair in all respects to the plaintiff.

Error to Eaton. (Hooker, J.) Argued January 9, 1890. Decided January 17, 1890.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Geo. W. Mead,* in *pro per.* (*Huggett & Smith,* of counsel), for appellant.

*John M. Corbin,* for defendants.

LONG, J. There is but little controversy about the facts in this case. They are substantially set forth in the brief of plaintiff's counsel as follows:

In the year 1881 one A. Markson was doing business in the city of Eaton Rapids, this State, as a clothier. He became embarrassed financially, and sold out his entire stock and business to his brother-in-law, Nathan J. Wolfe. This sale was immediately attacked by some of Markson's creditors as fraudulent. The stock was attached, John M. Corbin acting as attorney for the creditors. Wolfe replevied the goods attached, by a writ of replevin from the circuit court of Eaton county. Very shortly after, the stock was removed to Big Rapids, this State, by Wolfe, Markson being left in possession. In April, 1882, two notes against A. Markson were sent to George W. Mead, plaintiff in this case, for collection, aggregating something over $600. After some correspondence with Messrs. Glidden & Marsh, the defendants in this case, who were at that time practicing attorneys at Big Rapids, the notes were sent to them, with instructions from Mead to wait for orders from him; he watching the outcome of the case in Eaton county.

On January 19, 1883, immediately after a verdict had been rendered in Eaton county in favor of the creditors of Markson, George W. Mead telegraphed Messrs. Glidden & Marsh to commence suit by attaching the stock there; sending them a bond of indemnity for the officer, and such other directions as were deemed necessary. John M.

Corbin, having other claims for collection against Mark-
son, sent them to the same parties (Glidden & Marsh),
with like instructions to attach stock. After the several
attachments were served, Wolfe replevied from the sheriff.
When the replevin suit came off at Big Rapids, George
W. Mead, the plaintiff here, and John M. Corbin went
to Big Rapids to help try the case and look after the in-
terests that they each represented, and that were involved
in the replevin suit. Mr. Corbin, having been over all
the facts in the trial of the Eaton county case, and being
perfectly familiar with them, was given a leading position
on the trial, examining witnesses, etc. The sheriff justi-
fied under the several writs of attachment, and a ver-
dict was rendered in favor of the sheriff. Mr. Corbin
had, in the mean time, announced a waiver of the return
of the goods on the part of the defendant. As no judg-
ment had at that time been rendered in the attachment
cases, no judgment could be rendered in dollars and cents
on a verdict of the jury in favor of the sheriff. Mr.
Corbin afterwards saw his mistake, and wrote to Glidden
& Marsh to enter a motion asking leave to withdraw the
waiver of the return of the goods, and have a judgment
entered upon the verdict for their return. This the
circuit judge denied. After some delay, George W. Mead,
the plaintiff here, went to Big Rapids, and got a copy
of the records of the verdict, and the motion relating
thereto, and brought them home to Charlotte; and, after
consulting with Mr. Corbin, it was considered proper to
apply to this Court for a *mandamus* to compel the circuit
judge to grant the motion. This was done, and the
*mandamus* granted. The case is reported in 52 Mich. 529.
The circuit judge entered up the judgment pursuant to
the command of the Court, but immediately, on motion
of the plaintiffs in that case, set the judgment aside, and
granted them a new trial.

The case came on for trial the second time in May 1885. All parties were present at the trial, as before. A judgment was again rendered in favor of the sheriff. At this time, judgment had been rendered in the attachment cases; and, by waiver of the return of the goods, judgment was rendered in favor of the sheriff for the amount of his liens, aggregating $1,222.44, which was made up of the items as follows: $738.82 on notes sent to Glidden & Marsh by Mr. Mead, and $483.62 on notes sent to them by Mr. Corbin. The case was then removed to this Court by the plaintiff, Wolfe. This bill was settled by Messrs. Glidden & Marsh at Big Rapids, they being the attorneys of record for the sheriff, and a copy of the printed record sent to Mr. Corbin and Mr. Mead. Briefs were prepared by both, and all were placed in the hands of Mr. Corbin, who wished to get them printed at Eaton Rapids. The case was presented to this Court in the January term, 1886, and reported in 59 Mich. 246. The judgment below was affirmed. Mr. Corbin alone represented the defendant in person before this Court. Very shortly after the judgment was paid in full. Messrs. Glidden & Marsh, being the attorneys of record in both courts, received it, and canceled the judgment. After deducting their own fees and charges, $225, they, on their own motion, sent the whole of the balance, $1,143.97, to Mr. Corbin, besides $50 of the fund they had given him before. Out of this fund Mr. Corbin sent George W. Mead, the plaintiff here, $403.66. This action was brought against Glidden & Marsh, in *assumpsit,* declaration on the money counts; the plaintiff relying on their reports made to him to make his case. They appeared by John M. Corbin, and pleaded the general issue, and gave notice of set-off. On the trial the jury rendered a verdict against the plaintiff, and he has alleged errors on the trial, and removed it to this Court for review.

Nine errors are assigned. The first six relate to the rulings of the court in the admission of testimony. These will be considered further on. The seventh relates to the ruling of the court in permitting the defendants to amend their bill of particulars during the trial. This was a matter in the discretion of the trial court, and we do not find any abuse of such discretion. The amendment was made in the furtherance of justice; and, from the character of the amendment made, the plaintiff could not have been taken by surprise. It was amended by increasing the amount of the claim made for the expenses of John M. Corbin in the Supreme Court from $60 to $150. There was no error in this.

The eighth and ninth assignments of error relate to the charge of the court. It is claimed that the court erred in charging the jury:

"If you find, from the evidence in the case, that there was an agreement between the plaintiff, Mr. Mead, and the defendants and Mr. Corbin that Mr. Corbin's services in relation to the matter should be paid for out of the general fund collected; that he should perform certain services, and should receive pay for his disbursements, and the value of his services, from this general fund,— then I instruct you that the defendants had the right to pay for such services and such disbursements out of the general fund; but unless there was some such arrangement of that kind made, either expressly or impliedly, by Mr. Mead, they would not be warranted in making such payment, whatever the arrangement might have been between Mr. Corbin and Mr. Mead themselves. In short, unless there was something in the nature of an authorization by Mr. Mead to them, expressly or impliedly, to disburse this money, they would not be justified in paying Mr. Corbin anything for his services or disbursements."

It is again said, in the ninth assignment of error, that the court was in error in submitting the question to the jury as to the authorization by the plaintiff to the defend-

ants to pay Mr. Corbin for his services that he or they might deem him entitled to, in the absence of any, or any pretense of any, evidence of special or express authorization so to do in the testimony in the case. It will profit no one to set forth the testimony in the case upon which this charge is based. It is sufficient to say that the theory of the defense was that an arrangement was made between plaintiff, defendants, and Corbin that defendants were to pay to Corbin from the general fund, when collected, the amount of his services and disbursements, and some evidence was given by Corbin and the defendants to support this claim.

It is not contended that Corbin was paid too much, or that his services were not worth the amount paid, or that he did not actually disburse the amount allowed and paid him by the defendants. Certainly, under the circumstances, the charge was supported by the evidence, and was fair in all respects to the plaintiff.

The errors assigned upon the admission of evidence have no force. The first four relate to the cross-examination of the plaintiff while upon the stand as a witness in his own behalf. These questions were:

"1. Did you expect anybody would ever have those expenses to pay, and not to pay for their services in the Supreme Court?

"2. Did you consider yourself his (Daniel J. Cushman's) general agent and attorney in this part of the country for doing his business?

"3. In your arrangement with Glidden & Marsh, if they had gone from Big Rapids to the Supreme Court, and made the brief and presented the case, would you have considered it a proper item for them to deduct a share from your client's amount of the money?

"4. From what you know of the case and the points involved, what was it worth to prepare the brief, and present that case to the Supreme Court, outside of hotel-bills and personal expenses?

"5. What was it worth to look over the testimony, and agree upon a bill of exceptions,—the work that I did?

" 6. What is it worth to prepare a brief, and present the case to the Supreme Court, in a matter of importance?"

Mr. Mead was an attorney at law, and held the claims which were put into the hands of Glidden & Marsh from Mr. Cushman for collection. He had authority, and it was his duty to Mr. Cushman, to use his best endeavors to make the collection. This he did, and it is evident that Glidden & Marsh were acting in the utmost good faith in employing Mr. Corbin, who was familiar with the whole matter, to assist them; and, if the arrangement was made as claimed, Mr. Cushman would be bound by it. The plaintiff certainly, upon his cross-examination, could be asked the relation existing between himself and Mr. Cushman, and, as an attorney, as to his judgment of the value of the services. Mr. Corbin was asked the value of such services, and was permitted to give his opinion. This is the subject of the sixth assignment of error, but is too frivolous to be noticed. The fifth assignment of error relates to the same subject, and need not be discussed.

From a reading of the whole record, and the points made by counsel for appellant, it is quite apparent that this case was brought into this Court as a matter of experiment, rather than upon any well-grounded hope of reversal. The errors claimed do not exist, and such practice is not to be commended.

The judgment of the court below must be affirmed, with costs.

The other Justices concurred.