ELLIS and Another *v.* KENYON.

PLEADING.—A bad replication is good enough for a bad answer.

HUSBAND AND WIFE—MORTGAGE.—A mortgage executed by husband and wife, of the wife's separate real estate, to secure a debt of the husband, is valid. Page 136.

SALES FOR TAXES.—A statute which goes to divest the title of the citizen to real estate, although it may be for the public good, must be strictly construed. Page 139.

SAME.—A party setting up title under a sale for taxes must show that every provision of the statute under which the sale was made has been complied with; and as, under our statute, the personalty is made the primary fund for the payment of taxes, it is necessary for a party claiming title to real estate under a tax sale to show some legal excuse for the failure to collect the taxes out of the personal estate. Page 139.

APPEAL from the *Elkhart* Circuit Court.

ELLIOTT, J.—Suit by *Kenyon*, the appellee, against *Joel Ellis* and *Emeline Ellis*, his wife, to foreclose a mortgage executed by them on real estate, to secure certain notes given by said *Joel Ellis* to *Kenyon.*

The defendants filed a joint answer of two paragraphs, to which they subsequently added a third, on behalf of *Emeline*. A demurrer was sustained to the third paragraph of the answer, and overruled to the second. The first was a general denial, and to the second the plaintiff replied in four paragraphs.

The first paragraph of the reply was a general denial. Demurrers were filed to the 2d, 3d and 4th, which were overruled to the second and fourth, and sustained to the third. The issues were tried by the court and found for the plaintiff. Motion for a new trial, by the defendants, overruled, and judgment against *Joel Ellis* for the amount due on the notes, and a decree against both defendants of a foreclosure, and for the sale of the mortgaged premises for the payment of the judgment.

The appellants insist that the court below erred in over-ruling their demurrers to the second and fourth paragraphs of the reply to the second paragraph of the answer. This is the first question presented for our consideration.

The second paragraph of the answer alleges, "that at the time of the execution of the mortgage, and ever since that time, the said *Joel* and *Emeline* were, have been, and are husband and wife, living together as such, and that said mortgaged premises, before and at the time said mortgage was executed, were, ever since have been, and still are the separate and individual property of the defendant *Emeline Ellis*, and that the said notes were executed by *Joel Ellis* upon a supposed past or executed consideration, previously moving between the plaintiff and *Joel Ellis*, to which *Emeline Ellis* was a stranger, and upon no other consideration whatever; that the defendant *Emeline* was not then, nor is she now, nor hath she ever been indebted to the said plaintiff in any sum whatever; but that she executed said mortgage on her said lands solely as the surety of, and for her said husband, *Joel Ellis*, and not otherwise, and that said *Joel* has no vested interest in said lands whatever. Wherefore they say that said mortgage is void as to the said *Emeline* and *Joel*, and ought not to be foreclosed."

The second paragraph of the reply states the consideration for which it alleges the notes were given by *Joel*, and the mortgage executed, as well as the consideration for which the mortgaged premises were conveyed to said *Emeline*, before the execution of the mortgage. The fourth paragraph of the reply alleges that the notes and mortgage were executed in consideration of the conveyance to said *Emeline* by *Creevs* and *Stinson* of said mortgaged premises, and for no other consideration whatever.

It is not necessary that we should examine the replication, as we do not think the second paragraph of the answer, to which it was filed, constitutes any defense to the action, and it is a well settled rule of pleading that a "bad replication is good enough for a bad answer." *The Bank*

*of The State* v. *Lockwood*, 16 Ind. 306. The only question raised by the second paragraph of the answer is, can the wife incumber her separate real estate, by mortgage in which her husband joins, for the separate debt of the husband? In *Hubble et al.* v. *Wright et al.*, 23 Ind. 322, this question was ruled in the affirmative. It was there held, that the power of the wife to incumber or convey her real estate is only limited by requiring her husband to join in the deed; and she may mortgage her lands to secure the debt of her husband, by complying with the statute in that respect.

The issues, therefore, made upon the second paragraph of the answer were immaterial, and as a proper result was reached in the finding of the court, the case cannot be reversed for any alleged error growing out of those issues, or the trial thereof.

This disposes of the 5th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th, 18th, 19th, 21st, 22d and 23d assignments of error.

The next question presented is, did the court err in sustaining the demurrer to the third paragraph of the answer? That paragraph sets up a tax title to the mortgaged premises, acquired by *Emeline Ellis*, one of the defendants, after the execution of the mortgage to *Kenyon*, as a bar to his right to foreclose the mortgage. And it is insisted by the plaintiff, that as *Emeline*, under the statute, is not bound by the covenants in the mortgage, it only operates as a conditional release of her title existing at the time she executed the mortgage, and that a paramount title acquired by her after the execution of the mortgage does not inure, even in equity, to the benefit of the mortgagee, and therefore that she is not estopped from setting up such paramount title in bar of the mortgage. The answer, if otherwise good, can only be supported upon the hypothesis that the tax title set up in the answer is a valid one. It is proper, therefore, that we first examine whether the averments in the answer

are sufficient to show a valid sale and conveyance of the land for taxes, under the statute.

The answer, *inter alia,* avers that "said land was legally liable to taxation as the property of *Jacob Ellis,* the then owner thereof, and had been listed by him for taxation, and the list duly given by him to the proper officer," &c. It also avers "that a tax for state, county, township, school, road and other purposes was duly and regularly levied upon said real estate, with other lands, for the years 1858 and 1859," &c. Without repeating the averments of the answer, we assume that they sufficiently show a legal appraisement of the land for taxation, and a proper assessment of taxes for the years 1858 and 1859; that proper duplicates, including the land, were made out by the county auditor and delivered at the proper time to the county treasurer, in the years 1858 and 1859; that the taxes on said land for said years were not paid, and that the tax for 1858 was duly returned delinquent by the treasurer in his annual settlement with the county auditor, on the third *Monday* of *March,* 1859, and the delinquent list containing said land, properly sworn to by the treasurer, was duly recorded by the county auditor, &c.

The statute requires the treasurer, on the third *Monday* of *March* annually, to make settlement with the county auditor for the amount of taxes for which said treasurer is to stand charged as follows:

"*First.* The auditor shall take from the duplicate in the hands of the treasurer for collection, a list of all such taxes as said treasurer shall have been unable to collect, therein describing the property on which such delinquent taxes are charged, as the same property is described on such duplicate, and shall note therein, in a marginal column, the reasons assigned by such treasurer why such taxes could not be collected.

"*Second.* Such list shall be signed by the treasurer, and he shall also testify to the correctness thereof, under oath or affirmation, to be administered by the auditor.

"*Fifth.* After deducting the amount of taxes so return-
ed delinquent, and the collection fees allowed the treasurer,
from the several taxes charged on the duplicate in a just
and rateable proportion, the treasurer shall be held liable
for the balance." 1 G. & H., p. 101, sec. 123.

Section 124 of the same statute makes it the duty of the
treasurer, "on or before the second *Monday* of *April* in each
year, to pay over to the State treasurer all the moneys
found due for State revenue, according to the certificate of
settlement with the auditor of his county," &c.

Section 96 provides: "In case any person shall refuse or
neglect to pay the tax imposed on him; the county treasurer
shall, *after the third Monday of March,* levy the same, to-
gether with ten per centum damages, and costs and charges
that may accrue, by distress and sale of the goods and
chattels of such person who ought to pay the same, where-
soever the same may be found within the county." And
section 102 enacts that, "The several county treasurers be,
and they are hereby required, immediately after their an-
nual settlement with the auditor of State, either in person
or by deputy, to call upon every delinquent tax payer in
their respective counties, and, if necessary, to distrain
property for the collection of such delinquent tax, together
with penalty and interest."

The statute further provides that all property, both real
and personal, shall be liable for the taxes, interest, penalty
and costs, charged to the owner thereof, "which lien shall
in no wise be affected or destroyed by any sale or transfer
of any such personal property."

The deed of the auditor is made a part of the answer,
and recites that the land was returned delinquent in the
name of *Joel Ellis*, not *Jacob Ellis*, in whose name, it is
averred in the answer, it was appraised and assessed.

The answer contains no averment that the treasurer, after
the third *Monday* in *March*, 1859, or at any other time,
either in person or by deputy, called upon either *Joel* or
*Jacob Ellis* for said tax, or made any effort whatever to col-

lect the same by distress or sale of personal property, nor is it averred that said *Joel Ellis* or *Jacob Ellis* had no personal property in the county out of which said tax could be made, or that they, or either of them, were non-residents of the county; nor is any excuse shown why the same could not be collected by a distress of personal property.

"A statute which goes to divest the title of the citizen to real estate, although it may be for the public good, must be strictly construed." *Doe* v. *Chum,* 1 Blackf. 336. And a party setting up title under a sale for taxes must show that every provision of the statute under which the sale is made has been complied with. *Gavin* v. *Shuman,* 23 Ind. 32, and the authorities there cited.

The statute declares that the auditor's deed shall be conclusive evidence of the truth of all the facts therein recited, except the fact that the tax for which the land was sold had not been paid, of which fact it is made *prima facie* evidence. It is not necessary to discuss the legal effect of this provision. The statute does not make the deed *prima facie* evidence of title, it only makes it evidence of the particular facts recited in it, and there are many material facts requisite to show a valid sale under the statute that are not recited in the deed, all of which must be shown affirmatively by the party claiming under such a title. Here, the deed contains no recital or statement that any effort had been made to collect the tax by a levy on personal property, nor any reason why the same could not be so collected.

Under the statute, the personalty is made the primary fund for the payment of the taxes. The real estate can only be resorted to on failure of personal property. *Cones* v. *Wilson et al.,* 14 Ind. 465.

The paragraph of the answer under discussion, for the reasons stated, did not show a valid sale and conveyance of the land for taxes, and therefore the court did not err in sustaining the demurrer to it.

The 3d and 4th errors assigned, claim that the amount found by the court is greater than the amount of the

principal and interest due on the notes, but by calculation we find the amount correct.

6th. One of the notes described in the mortgage is for $200, and is described as being "with interest." The complaint alleges that it was "described in said mortgage, by mistake, as drawing interest from date, the same as the other three notes, but that it is the same note intended to be described in and secured by the mortgage." On the trial, the plaintiff was permitted to prove, by parol, the mistake in the description in the mortgage, and the identity of the note, to which the defendants objected, and this is assigned as error. There is nothing in the objection.

The notes and mortgage waive the benefit of the appraisement laws, and the judgment and decree of foreclosure are in accordance therewith, and this is the 20th error assigned. The judgment and decree are right.

We find no error in the record, and the judgment must therefore be affirmed.

No brief was filed in the case by the appellee.

The judgment is affirmed, with five per cent damages and costs.

FRAZER, C. J., having been concerned as counsel, was absent.

*J. H. Baker*, for appellant.