Cole *v.* Gray *et al.*

Filed Nov. 13, 1894.

◆

No. 16,982.

## COLE *v.* GRAY ET AL.

QUIETING TITLE.—*Complaint.*—*Demurrer.*—A complaint in the usual form to quiet title to real estate, which alleges that the defendants have no interest in the property, and no lien of any kind thereon, is not rendered bad on demurrer because it appears by subsequent pleadings and the evidence that the defendant held a valid lien for taxes paid.

SAME.—*Deed.*—*Can not be Varied by Parol.*—*Tax Lien.*—*Transferred by Deed Notwithstanding Oral Agreement.*—A deed can not be contradicted, changed or modified by previous or contemporaneous oral negotiations, stipulations or agreements inconsistent with its terms; and so where the vendee of the holder of an invalid tax deed seeks to enforce the lien given by statute, an answer that at the time of taking his conveyance from the holder of the tax deed the plaintiff and his grantor had agreed that such conveyance should not transfer either the title or the lien for taxes, but should merely operate as a release of the lien, and that subsequently the defendant had paid to the plaintiff's grantor the full amount due on account of the tax sale and taken to himself a quitclaim deed, is bad.

SAME.—*Redemption from Tax Sale.*—*Recorded Deed.*—*Notice.*—In making redemption from a tax sale the owner is bound to know, where a conveyance from the holder of a tax deed to a third person is upon record, that such conveyance carried to the grantee the purchaser's lien.

From the Tipton Circuit Court.

*R. N. Lamb* and *R. Hill*, for appellant.
*G. Shirts* and *I. A. Kilbourne*, for appellees.

Cole *v.* Gray *et al.*

McCabe, J.—The appellee John M. Gray brought this suit against the appellant and others, in the Hamilton Circuit Court, to quiet his title to several lots in the city of Noblesville, in the county of Hamilton, to wit:   Lot 4, in square 2; lots 2 and 3, in square 3; lots 3 and 4, in square 6, all in Evans and Gray's addition; also the east half of out lot 9 in G. M. Shaw's addition in said city.

The circuit court overruled a demurrer to the complaint, assigning the insufficiency of the facts therein.

The appellant, Cole, answered the complaint by a general denial, and filed a cross-complaint against his codefendants and others.

The appellee John M. Gray answered the cross-complaint by a general denial and a second paragraph in confession and avoidance.

Some of the other parties were defaulted, and the rest of them answered the cross-complaint, but no question arises thereon.

There was a trial of the cause in the Hamilton Circuit Court, and a new trial as of right taken, and the venue of the cause was changed to the Tipton Circuit Court, where a trial of the issues by the court, without a jury, resulted in a finding and judgment in favor of the appellee John M. Gray, quieting his title in the lots mentioned, subject to a lien thereon in favor of the appellant, Cole, for $7.20 for taxes paid for which said Cole had judgment.

The errors assigned call in question the action of the trial court in overruling the demurrer to the complaint and in overruling the demurrer to the second paragraph of the answer to the cross-complaint, and in overruling appellant's motion for a new trial for cause.

The complaint is in the usual form of a complaint to quiet title, alleging, in substance, that the plaintiff was

the owner in fee simple of the lots in question, and that the defendants, the appellant and others, claimed some interest therein, but that they had no interest nor lien upon said premises, nor any part thereof.

The objection urged to this complaint is that it appears from the subsequent pleadings and from the evidence on the trial, that appellant, Cole, held a lien on the lots for money paid on an invalid tax sale thereof, and for taxes paid thereon by his grantor and himself while holding such invalid tax title.

It is contended by the appellant that the owner of real estate can not maintain an action to quiet his title against the holder of an invalid tax title without first tendering to such holder the amount due him on account of the lien for the purchase-money paid and subsequent taxes paid and keeping the tender good.

Many decisions of this court are cited in support of this contention.

One of the cases cited by counsel in support of their contention is *Willard* v. *Ames*, 130 Ind. 351. That was a suit also to quiet title, the complaint being in two paragraphs. The first paragraph was in the usual form, substantially the same as the complaint here. No question was raised as to that paragraph. The second paragraph showed specifically that the cloud upon the plaintiff's title, on account of which it was sought to quiet it, arose from a tax sale and deed, and proceeded upon the ground that the tax title was ineffectual to convey the title, and sought to have it declared void. And it was very properly held that the paragraph was bad because it disclosed that the defendant had a lien for the taxes paid, and that before the plaintiff can be heard in a court of equity to ask that such a sale and conveyance be set aside and declared void and his title quieted, he must do that which equity requires, namely, pay or tender that

which has been expended for his benefit, there being no such payment or tender alleged in that case. To the same effect are all the cases cited by appellant's counsel on that point.

Manifestly, those cases have no application to the present complaint in this case, because it does not disclose the existence of any such lien; on the contrary, it expressly alleges that the defendants have not only no interest in the lots, but that they have no lien thereon of any kind.

The demurrer admits these averments to be true. A party can not demur to a pleading without admitting the truth of all material facts alleged for the purposes of the demurrer. These facts were material to the right of the plaintiff to maintain the action to quiet his title. The sufficiency of the facts in a pleading on a demurrer thereto can not be strengthened or weakened, added to or diminished by facts stated in other pleadings subsequently filed, or by the facts proven on the trial. The sole question presented by a demurrer to a pleading for want of sufficient facts is whether the facts stated therein, conceding them to be true, are sufficient in case of a complaint to constitute a cause of action, in case of an answer to constitute a defense, and in case of a reply to constitute an avoidance of the answer. In such case no question is presented as to the truth of the material facts stated.

We, therefore, hold that the complaint stated facts sufficient to constitute a cause of action and that the court did not err in overruling the demurrer thereto.

The cross-complaint was in two paragraphs. The first stated a cause of action to quiet the alleged title of the cross-complainant, Cole, to the lots already described, but did not disclose the nature of the claim that the

defendants to the cross-complaint were making to the lots.

The second paragraph, after stating substantially the same facts stated in the first paragraph, states that the cross-complainant's title to said lots is a deed executed by the auditor of the county, pursuant to a sale thereof for the nonpayment of taxes thereon, to one Abijah M. Jenkins, who afterwards conveyed the same by deeds to the cross-complainant, and that all of said deeds were duly and properly recorded in the recorder's office of Hamilton county. Moreover, the paragraph states that if, upon the final hearing of the cause, the court shall be of opinion that the cross-complainant's title to said real estate is invalid by reason of any informality, defect or irregularity in said tax sale or otherwise, then in that event the cross-complainant prays the court that the amount of taxes assessed against said real estate for which the same was sold at said tax sale shall be ascertained and computed together, with the taxes subsequently paid thereon by the cross-complainant and his grantor, said Abijah M. Jenkins.

The controlling question in the case arises on the demurrer to the second paragraph of the answer of the appellee John M. Gray to the cross-complaint of appellant.

The substance of that paragraph is that on September 4, 1888, Peter Gramling recovered a judgment against said appellee John M. Gray for $155 and costs, and that said Gramling on October 1, 1889, duly assigned said judgment to the cross-complainant, Cole; that afterwards an execution was duly issued on said judgment whereon said lots were duly sold at sheriff's sale to said cross-complainant for $150 on January 11, 1890, and a certificate of purchase was accordingly issued to him by the sheriff; that on February 15, 1887, and for many years

Cole *v.* Gray *et al.*

before that time the plaintiff appellee John M. Gray was, ever since has been, and still is, the owner of the lots already described, together with other real estate hereinafter described; that on the day last aforesaid the auditor and treasurer pretended to sell at public auction for the nonpayment of taxes thereon the real estate already described above, as well as the following, all situate in the said city of Noblesville, to wit, lot 5 in square 4 in F. W. Emmons' addition, lot 4 in square 4, lot 4 in square 2, all in the same addition, and outlot 9 in G. M. Shaw's addition; that the amount of the taxes due upon each of said parcels of real estate was not carried out upon the tax duplicate, but the amount thereof was set out in gross as against the whole, and was set out in gross in the notice of said tax sale; and in the notice of tax sale and delinquent list kept by the auditor, the said lots in said Evans' and Gray's addition were not described at all. The whole of the property was attempted to be sold by said officers at said tax sale in one body for the gross sum of $160 to Abijah M. Jenkins, who paid said sum therefor, and a certificate of purchase was accordingly issued to him. But the plaintiff avers that the said tax sale was wholly ineffectual to convey title to said purchaser for any portion of said real estate for the reasons, among others, that there was no description of the part of said property in Evans' and Gray's addition in the notice of the sale, and for the reason that at the time of the said tax sale the said John M. Gray was, and for many years prior thereto had been, a *bona fide* resident and householder of said city, and he then and there was the owner of personal property consisting of horses, buggies, cows, library and household and other goods of more than the value of $500, situate within the limits of said city, which might have been,

but were not, sold for the payment of said taxes; that on February 25th, 1889, the auditor of said county executed to said Abijah M. Jenkins, pursuant to said sale, a deed for all the real estate already described above, which is the only title ever held by said Jenkins at any time for said real estate, and under which he had nothing but a lien for the amount of his purchase-money, interest, penalties and subsequent taxes paid; that afterwards, and while said Cole was the holder of said judgment, he was desirous of procuring the title to said lot 4 in square 2 in Evans' and Gray's addition, and proposed to accept the same in satisfaction of said judgment, and agreed to do so, and to pay said Jenkins $15, in consideration of which Jenkins agreed to release his lien on said lot. The money was paid by said Cole, and to make said release effectual, and for no other purpose or consideration, the said Jenkins and wife executed to said Cole a quitclaim deed for said lot, but it was then and there expressly stipulated and agreed between the said Jenkins and said Cole that said release should in no manner impair the lien so held by said Jenkins as to the remainder of the real estate covered by said tax sale, nor should such arrangement in any way lessen the amount of money which said Jenkins was entitled to receive and recover from said Gray, and it was then and there expressly understood and agreed between said Cole and said Jenkins that the latter did not, by said transaction, in any manner sell, assign or transfer to said Cole any part of the lien so held by said Jenkins. But after said Cole received said deed for said last named lot, said Cole then declined to take from plaintiff, Gray, the said lot in satisfaction of said judgment, but demanded that plaintiff should, in addition thereto, convey to him other lots, and failing to agree in this said Cole proceeded to sell upon execution as first herein alleged. Afterwards, and

while Cole was still holding his sheriff's certificate for the portion of the real estate described therein as aforesaid, the year for redemption thereof not having expired, to wit: On March 5th, 1890, the said Jenkins and said Cole entered into an agreement by the terms of which the said Jenkins agreed to release and discharge his said tax lien as to said lots 2 and 3 in square 3, and lots 3 and 4 in square 6 in said Evans' and Gray's addition to the end that in the event that there should be no redemption from said sheriff's sale that the said Cole might gain title thereto by sheriff's deed free from any claim of the said Jenkins on account of said tax sale; but it was then stipulated and agreed between the said Jenkins and Cole that the said release should in no manner impair the said lien so held by him to the remainder of the real estate covered thereby, nor should said arrangement in any way lessen the amount of money which said Jenkins was entitled to recover from the said Gray on account of said tax sale, nor impair his right to recover the whole amount thereof from said Gray the same as if said arrangement had never been made; and in consideration that said Jenkins would so relinquish his right to hold said lien upon the portion of said lots covered by said sheriff's sale, and for no other consideration whatever the said Cole agreed to and did pay to said Jenkins at the date of such agreement the sum of $50, and thereupon, in order to make said release effectual, the said Jenkins and wife executed to said Cole a quitclaim deed for the lots last herein described, and it was then expressly understood and agreed between said parties that said Jenkins did not thereby in any manner sell, assign or transfer to said Cole any portion of the lien held by said Jenkins, but the money paid by said Cole was only paid by him to induce said Jenkins to release the said lien upon the property in which Cole claimed an interest, and to induce

said Jenkins to look to the remainder of said lots for the payment of said lien; and the said Cole has no interest in nor lien upon any portion of said real estate described in his cross-complaint unless some such interest is conferred by said quitclaim deeds from said Jenkins; that on November 19, 1890, plaintiff redeemed from said tax sale, so made as aforesaid by paying to the said Jenkins the full amount of his said lien, including penalty, interest and taxes paid by said Jenkins, which redemption money was then accepted by said Jenkins in full payment of his said lien, and in full recognition of the fact that said tax sale was ineffectual to convey title for the reasons aforesaid, and to fully carry out said redemption, and make the same effectual, the said Jenkins and wife then executed to plaintiff a quitclaim deed for all the real estate purporting to have been embraced in said sale, since which time the said Jenkins has neither had nor claimed any interest in, nor lien upon, any portion of said real estate, and by the payment of said lien to said Jenkins as aforesaid, the said real estate was entirely freed from any and all claims on the part of any one growing out of said tax sale, and no deductions whatever were made in such payment from the amount of such lien on account of any sum of money paid by said Cole to said Jenkins for the release aforesaid; that afterwards, and within the year allowed by law for redemption, to wit, on November 20, 1890, the plaintiff Gray redeemed from said sheriff's sale upon said Gramling judgment by paying the full amount of purchase-money, interest and costs, which sum of money was received by said Cole in full of said redemption, and at the same time the plaintiff paid the balance of said judgment which was also received and accepted by said Cole in full payment thereof; that said Cole paid the April installment of taxes in 1890 due upon the real estate de-

scribed in his cross-complaint voluntarily, and with full knowledge that plaintiff intended to redeem from said sales, which taxes so paid in April, 1890, amounted to the sum of $6.17. But before the commencement of this suit plaintiff offered to pay to said Cole the taxes which he had thus paid, with interest thereon, but said Cole refused to receive the same, and the plaintiff has ever since been, and still is, ready and willing to pay said sum.

Plaintiff therefore avers that cross-complainant has no title whatever to any portion of said real estate, nor lien thereon by purchase, payment or otherwise, on account of taxes or tax sales, and plaintiff therefore demands judgment for costs and other proper relief.

The sufficiency of this answer depends on the answer to the question: Can the terms and legal effect of a written contract or deed be contradicted, changed or modified by previous or contemporaneous oral negotiations, stipulations or agreements inconsistent with its terms? Because the substance and gist of the answer are that the deeds of conveyance from Jenkins to appellant Cole were not intended as conveyances either of the title or a transfer of the lien for taxes, but were intended, designed and agreed by oral contemporaneous stipulations to be nothing but a release of a lien for the taxes for which the property had been invalidly sold. It is true the answer does not aver that such previous or contemporaneous stipulations were oral, and not in writing, neither does it aver that they were in writing. In such a case it will be presumed that they were not in writing, but rested in parol. *Carlisle* v. *Brennan*, 67 Ind. 12; *Langford* v. *Freeman*, 60 Ind. 46; *Goodrich, Admr.*, v. *Johnson, by Next Friends*, 66 Ind. 258. *Prima facie* the legal effect of the deeds from Jenkins to Cole

was to transfer the title to Cole if Jenkins at the time had title to the lots.

But under the averments of the answer to the cross-complaint which, for the purposes of the demurrer are admitted to be true, he did not have title for the reason, among others, that it appears from such answer that the owner had personal property in the county at the time out of which the taxes might have been made. *Ellis* v. *Kenyon*, 25 Ind. 134; *Ward* v. *Montgomery*, 57 Ind. 276; *Woolen* v. *Rockafeller*, 81 Ind. 208; *Earle* v. *Simons*, 94 Ind. 573; *Sloan* v. *Sewell*, 81 Ind. 180.

When a tax deed proves ineffectual under the statute in force when this sale took place, to convey the title for any other cause than that the land shall not have been liable to taxation, or if liable, that the taxes thereon have been paid before the sale, or if the description is so imperfect as to fail to identify the land or lot, the lien which the State had for the taxes is transferred to the grantee, and vested in him, his heirs and assigns, as the direct legal effect given to the deed by the statute. Elliott's Sup., sections 2142 and 2144. *Morrison* v. *Jacoby*, 114 Ind. 84.

The burden of showing that the lots were not subject to taxation, or that they were not described so as to identify them, as well as that the taxes had been paid, is on the party who resists the enforcement of the lien, and in this case that is the plaintiff Gray. *Morrison* v. *Jacoby, supra; Scott* v. *Millikan*, 104 Ind. 75; *Earle* v. *Simons, supra*.

It is nowhere alleged in the answer that the description was not sufficient to identify the lots. Besides, it is not alleged that the defective description applied to all the lots. If only a part of the lots were so defectively described as that they could not be identified, the answer would be bad if it rested alone on the defective de-

scription, because as to those whose description was not
thus defective the lien would not be defeated, and thus
the answer purporting to be a full defense would only be
a partial one, defeating, as it would, only a part of the
lien.   But, as before observed, the intention and theory
of the answer is to defeat the lien by defeating the trans-
fer thereof from Jenkins to Cole by virtue of the deeds.
The answer seeks to do that by the introduction of parol
evidence to vary and change the legal effect of such
deeds.

It was held, in *Sage* v. *Jones, Admr.*, 47 Ind. 122,
"that parol evidence is not admissible to vary, contra-
dict, add to, or take from the terms of a written instru-
ment or its legal effect." *Chapman* v. *Long*, 10 Ind. 465.

In *Oiler* v. *Gard*, 23 Ind. 212 (217), it is said:  "The
rule is, that all oral negotiations or stipulations between
the parties, which preceded or accompanied the execution
of the instrument, are to be regarded as merged in it, and
that the latter is to be treated as the exclusive medium
of ascertaining the agreement to which the contractors
bound themselves."

To the same effect are *McClure* v. *Jeffrey*,  8 Ind. 79;
*Madison, etc., Plank Road Co.* v. *Stevens*, 10 Ind. 1; *Oiler*
v. *Bodkey*, 17 Ind. 600; *Woodall* v. *Greater*, 51 Ind. 539.

In 2 Devlin on Deeds, section 837, it is said:  "The
question is not what the parties to a deed may have in-
tended to do by entering into that deed, but what is the
meaning of the words used in that deed; a most import-
ant distinction in all classes of construction, and the
disregard of which often leads to erroneous conclus-
ions."

And the same author, in section 840, says:  "The in-
tent, when clearly expressed, can not be altered by evi-
dence of extraneous circumstances."

It has often been held by this court that all prior parol

agreements relating to a sale of land are presumed to be merged in the deed, and that such agreements can not be proven to contradict the deed. *Turner* v. *Cool*, 23 Ind. 56; *Coleman* v. *Hart*, 25 Ind. 256; *Cincinnati, etc., R. R. Co.* v. *Pearce*, 28 Ind. 502; *Fouty* v. *Fouty*, 34 Ind. 433.

In 7 Am. and Eng. Encyc. of Law, 91, it is said: "When any judgment of any court, or any other judicial or official proceeding, or any contract or grant, or any other disposition of property, has been reduced to the form of a document or series of documents, no evidence may be given of such judgment or proceeding, or of the terms of such contract, grant, or other disposition of property, except the document itself, or secondary evidence of its contents in cases in which secondary evidence is admissible under the provisions hereinbefore contained. Nor may the contents of any such document be contradicted, altered, added to, or varied by oral evidence."

Then follows numerous well known exceptions to this rule, but the case before us falls within none of them.

One exception to this rule is that a deed absolute on its face may, in equity, be shown, by parol evidence, to have been intended to have the effect of a mortgage merely. The foundation on which this exception rests is that under the circumstances of the deed appearing on its face to be absolute when it was intended to be a mortgage, it is presumed to have been occasioned by mistake or fraud. *Conwell* v. *Evill*, 4 Blackf. 67.

Nothing of that kind is claimed here. It is, however, claimed by appellees' learned counsel that the action of Gray in what he calls redeeming the whole of the lots from the tax sale by paying to Jenkins the whole amount due on account of such sale and taking Jenkins' quitclaim deed to himself therefor, is not a contradiction or

variation of the legal effect of the deeds from Jenkins to Cole, but is simply carrying into effect the oral agreement between Cole and Jenkins by which the latter was to have the right to collect the whole amount from Gray for which all the lots were liable on account of such tax sale.

This argument is unsound, because the right of Jenkins to receive the redemption money on the lots he had deeded to Cole depended entirely on the validity and binding force of his oral agreement with Cole that he might so receive it. If no other contract than the deeds had been made, all must admit that he would not have that right, because it has been held by this court that it is only the last vendee of an invalid tax title that can maintain an action to enforce the lien for the taxes. *Morton* v. *Shortridge*, 38 Ind. 492.

Therefore, the acceptance of the redemption money by Jenkins can have no effect on Cole's rights unless the oral agreement was valid as against Cole and as against his deeds. Having been made contemporaneously with such deeds for the purpose of varying their legal effect, as we have seen, such oral agreements were invalid, and did not vary or change the legal effect of the deeds.

Conceding, without deciding, that Gray might redeem from the tax sale by taking a deed from the purchaser thereat, Jenkins, yet, as the cross-complaint to which Gray's answer in confession and avoidance was addressed showed that the deeds were on record in the proper recorder's office, the answer not denying that fact, admitted the same for the purposes of the cross-action. Burns R. S. 1894, section 386; R. S. 1881, section 383.

Gray was, therefore, bound to know when he paid the whole amount of redemption money to Jenkins, that Jenkins had made deeds purporting to convey to Cole a part of the lots sold to Jenkins at tax sale, and he was

Cole *v.* Gray *et al.*

bound to know that the legal effect of those deeds was to transfer the lien to Cole for the taxes due on those lots.

We see no escape from the conclusion that the deeds from Jenkins to Cole vested in the latter the lien for taxes for which the lots embraced in them had been sold, together with the penalties, interest and subsequent tax paid, and that the court below erred in overruling the demurrer to the second paragraph of Gray's answer to the cross-complaint.

This leads to the further conclusion that the court below erred in overruling the motion for a new trial on account of the error in admitting parol evidence to vary the legal effect of the deeds in question.

The judgment is reversed and the cause remanded, with instructions to sustain the motion for a new trial.

Filed Nov. 21, 1894.