SHEDD ET AL. v. AMERICAN MAIZE PRODUCTS COMPANY.

[No. 8,372. Filed April 16, 1915. Rehearing denied June 24, 1915. Transfer denied November 19, 1915.]

1. EASEMENTS.—*Establishment and Protection.—Injunctive Relief.—Complaint.*—An indefinite easement or right of way which is not specifically located and described can not be established and protected and described; hence a complaint to enjoin encroachments upon or interference with an easement or right of way, which does not furnish the means or data for entering a definite decree, including a definite description as to dimensions and location, is insufficient. p. 154.

2. EASEMENTS.—*Location.—Persons Entitled to Locate Way.*—When an unlocated right of way is granted, or reserved, the owner of the servient estate may, in the first instance, designate a reasonable way, and if he fails to do so, when requested, the owner of the dominant estate may designate it. p. 154.

3. EASEMENTS.—*Location.—Selection by Owner of Dominant Estate.*—When the owner of the dominant estate or easement designates the location of the easement, he is required to select a route that is reasonable as to both parties in view of all the circumstances and that will not unreasonably interfere with the grantor, or owner of the servient estate, in the enjoyment of his property. p. 155.

4. EASEMENTS.—*Location.—Change of Location.*—When an easement or right of way has once been selected and located, it can not be changed by either party without the consent of the other. p. 155.

5. EASEMENTS.—*Interference.—Suit for Injunctive Relief.—Complaint.*—A complaint to enjoin defendants from interfering with the construction of a pipe line across defendants' land pursuant to the grant of an easement for same so as to connect plaintiff's premises with a lake, was insufficient, where it did not describe the real estate over which the easement was granted, and did not allege that the way over which the pipe line was to be extended into the lake had been located by any one, or that plaintiff had requested defendants to select the location and that they had failed and refused to do so, or that they had selected an unreasonable location, or that plaintiff had itself chosen the route. p. 155.

6. NAVIGABLE WATERS.—*Riparian Rights.—Right of Owner of Easement.*—An easement in land bordering on navigable waters carries such riparian rights in the submerged lands between the shore and the navigable portion of such body of water as are appropriate and necessary to give effect to the easement. p. 156.

7. EASEMENTS.—*Location.—Riparian Rights.*—Where defendants granted to plaintiff an easement for a pipe line through the land of defendants and into a lake on which such land fronted, and plaintiff had constructed the pipe line to a point near the shore of the

lake, the location of the pipe line from that point into the lake was governed by the rules for the location of any easement granted, and the general rule for the determination of that portion of submerged lands over which riparian rights may be asserted, as between adjoining property owners, by extending lines from the water's edge at right angles to the prevailing shore line was inapplicable. p. 156.

8. EASEMENTS.—*Location.*—*Selection of Route.*—Under a grant of an easement for a pipe line across defendants' land and into a lake the interested parties could make any reasonable location of the easement on the property over which it extended, so long as they did not encroach upon or interfere with other property. p. 158.

9. PLEADING.—*Demurrer.*—*Scope of Inquiry.*—A pleading tested by a demurrer must stand or fall by its own averments alone, though the omission from a complaint may be cured or rendered harmless by an admission of the adverse party in his answer. p. 158.

10.—APPEAL.—*Exceptions to Conclusions of Law.*—*Admissions.*—*Sufficiency of Complaint.*—While an exception to conclusions of law admits for the purpose of the exception that the facts within the issues have been fully and correctly found, it does not always render a consideration of the complaint unnecessary, and it is only where the facts are fully and correctly found within the issues that an exception to the conclusions of law presents the same question as a demurrer to the complaint for want of facts. p. 159.

11. APPEAL.—*Review.*—*Amendments Regarded Made.*—Where a complaint to enjoin interference with an easement for a pipe line over the land of defendants and into a lake failed to describe the shape, dimensions or position of the easement, or a request by plaintiff for the location of the way and a refusal by defendants to grant it, and defendants by both their answer and cross-complaint alleged ownership of the real estate between the lake shore and plaintiff's premises, specifically describing same, and further alleged that defendants indicated and pointed out the site, place and location for the proposed easement and right of way for such pipe line, that the same was in a convenient place, extending in a straight line from plaintiff's plant in a northerly direction to the lake, at a point and position west and westerly from certain piers, docks and harbor, that the location pointed out was reasonable, and that plaintiff had no rights at the place where it was attempting to construct its line, etc., and it appears that the question of the location of the easement was tried on evidence introduced by both parties without objection, and that the issue was fully tried and determined, the defects in the complaint, being such as could have been amended at any time under §405 Burns 1914, §396 R. S. 1881, will be deemed, under §700 Burns 1914, §658 R. S. 1881, to have been amended so as to preclude a reversal. p. 160.

12. TRIAL.—*Findings.*—*Sufficiency.*—Findings can not be aided by the conclusions of law, and to warrant a recovery by plaintiff

every fact material to the cause must be found and stated, or must necessarily and clearly arise by inference from the facts found and stated. p. 163.

13. TRIAL.—*Findings.*—*Failure to Find Material Fact.*—The failure to find a material fact is the equivalent of a finding against the party upon whom rests the burden of proving such fact. p. 163.

14. EASEMENTS.—*Deed.*—*Variation by Parol.*—*Findings.*—While a deed granting an easement, like other written contracts, is the repository of the entire agreement, and, in the absence of fraud, can not be varied by parol evidence, the actual consideration may be shown by parol to have been different from that expressed in the deed; hence in an action to enjoin interference with plaintiff's easement for a pipe line over the land of defendants, where the deed did not definitely locate the line of the easement, findings on parol evidence showing that grantor pointed out the way for the pipe line as an inducement to the purchase of the land to which the easement was appurtenant, and that this entered into the consideration for the purchase, were not objectionable as being outside the issues or as tending to vary the terms of the deed. p. 172.

15. EASEMENTS.—*Interference.*—*Suit for Injunctive Relief.*—*Find ings.*—In a suit to enjoin interference with the construction of a pipe line across defendants' land and into a lake pursuant to the grant of an easement therefor, findings showing that during the negotiations for the sale to plaintiff of the land to which the easement was appurtenant defendants pointed out the line of the proposed easement, and again pointed it out after the sale was consummated, in each instance locating it east of a certain pier, and that plaintiff in extending the pipe line from a point where prior work of construction had ceased changed to a more easterly course than that indicated by extending the line in the direction pursued in such prior construction, so as to extend into the lake east of the pier, instead of west thereof as would otherwise have been the case, do not show that the course of the easement was changed from the line originally pointed out, nor are findings showing that plaintiff did not demand or request defendants to locate the remaining portion of the easement either before or after entering into the contract for such extension, in conflict therewith in the absence of a finding that there was an agreement to change the location as originally pointed out; and hence such findings supported the conclusions of law in favor of plaintiff. p. 174.

16. EASEMENTS.—*Suit to Enjoin Interference.*—*Defenses.*—*Creation of Nuisance.*—Where plaintiff sought to enjoin interference with the laying of a pipe line across the land of defendants and into a lake pursuant to the grant of an easement for such purpose, the relief sought could not be denied on the ground that the findings showed that the establishment of such pipe line would be a nuisance by reason of the pollution of water by the outfall discharged therefrom, where it appeared from other findings that defendant had selected

the location for such easement, and that for two years prior to the alleged interference the discharge from plaintiff's partially constructed pipe line had polluted the water, of which fact defendants had knowledge and of which they had made neither complaint nor objection, and in the absence of a showing that the completion of such pipe line would in any way increase the pollution. p. 176.

17. Easements.—*Interference.*—*Suit for Injunctive Relief.*—*Parties.* —A decree enjoining defendants from interfering with the construction of a pipe line across their land, pursuant to the grant of an easement therefor, so as to connect plaintiff's premises with a lake at a point in a harbor maintained at the mouth of a stream emptying therein, was not contrary to law on the ground that third persons claiming an interest in such harbor had not been permitted to intervene, since, in view of findings showing that the interests of such third persons consisted merely in a right equal with that of defendants to dredge the harbor and make it suitable for general use, that the same had not been made suitable for lake vessels, that plaintiff's pipes had been laid below the bed of such harbor and could be lowered by defendants at any time at a small cost to be borne by them, and from which it does not appear that the pipes will ever become an obstruction or interfere with any right of such third persons, the latter were not necessary parties to the suit. p. 179.

18. Injunction.—*Right to Relief.*—*Remedy at Law.*—A party is not necessarily precluded from injunctive relief by the fact that he has a remedy at law, since the court may grant such relief where it appears that the legal remedy is not as prompt, practical, efficient and adequate as that afforded by equity. p. 182.

From Lake Superior Court; *Charles W. Hanley* Special Judge.

Action by the American Maize Products Company against Charles B. Shedd and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*William J. Whinery, Harry S. Mecartney* and *Fred Barnett,* for appellants.

*Peter Crumpacker, F. C. Crumpacker* and *C. B. Tinkham,* for appellee.

Felt, J.—On September 29, 1909, appellee, American Maize Products Company filed its verified complaint asking the issuance of a temporary restraining order and that upon final hearing it be made permanent, enjoining appellants from interfering with the construction of certain pipe lines

from appellee's factory over the land of appellants, Charles B. and Edward A. Shedd, (hereinafter referred to as "the Shedds") and into Lake Michigan, by extending the pipe line from said land, in and through what is known as Wolf River harbor or outlet, and thence into Lake Michigan. Appellee asserts the right so to do by virtue of a certain grant from the Shedds, the particulars of which will more fully appear in this opinion.

The complaint is in one paragraph and alleges in substance that appellee is a corporation and owns and operates a plant, in the city of Hammond, Indiana, located about one-half mile from the shore of Lake Michigan, in which it manufactures certain food products from grain; that on November 12, 1906, the Shedds conveyed to the Western Glucose Company, the real estate on which the plant is located, that the Shedds at that time owned, and still own, all the natural land lying between the land so conveyed and the shore of Lake Michigan, subject to certain assessments; that at the time the conveyance was made to appellee's predecessor, the Western Glucose Company, as a part of the consideration therefor, the Shedds granted to said company, its successors and assigns, an easement for a right of way under their land, lying between the lands so conveyed and the shore of Lake Michigan to connect the land with Lake Michigan by two pipe lines of iron, vitrified tile or cement, "to be not less than twenty-four inches in diameter and to be laid so that the tops thereof should be at least one foot below the Chicago city *datum*." That thereafter the Western Glucose Company constructed the pipe lines to within a few feet of the water line of the shore of Lake Michigan and near to Wolf River outlet; that the purpose of the construction of said pipe lines was to provide a sewer outfall for its

plant and for a water intake whenever the company saw fit to extend its pipe line far enough into the lake to provide an efficient supply of water, all of which was well known to the Shedds at the time they granted the easement; that in February, 1908, said Western Glucose Company sold and conveyed to appellee all its right and title in and to its manufacturing plant and to the real estate including the easement and right of way for said pipe lines; that on September 12, 1909, appellee procured a permit from the United States government to extend said pipes due north of their termination aforesaid and to dredge a channel in said lake in which to lay said pipes, that it is now proceeding with that work; that it had purchased large amounts of material for the work; and has at this time dredged said channel to within about thirty feet of the shore of Lake Michigan and the termination of the pipe line aforesaid; that the Shedds claim to own the land along the shore of Lake Michigan at the point where the pipes terminate and for a long distance west and north thereof, where said pipes are stored, and also claim to have certain rights in the submerged land under the waters of Lake Michigan adjoining the shore line aforesaid, the source and extent of which claim is unknown to appellee; that because of such claim appellee, its contractors and employes, before said work was begun, obtained the permission of the Shedds to throw the sand and earth dredged from the channel on the shore of the lake and to build a tool shanty thereon, and to lay pipes thereon until used; that some time after the pipes had been so placed and the shanty constructed, the dredging of the channel begun, the Shedds served written notice on appellee and its contractor doing the work to stop work immediately and not to move the pipe stored as aforesaid; that the Shedds, their

agents, servants and employes are now threatening to stop the work by force and violence and to prefer false charges against the officers of appellee company, its agents, contractor, servants and employes and cause their arrest, charged with criminal trespass, thereby hindering and delaying the progress of the work; that the defendants, Henry Fisk and William Hyar are the agents and employes of the Shedds, and are at the place where said work is being done and where the pipe is stored, and are threatening to stop the work by force and violence, and refuse to allow appellee or its contractor to remove the pipes so stored as aforesaid and place them in position in the channel; that the Shedds have a large force of men within easy call to prevent the progress of the work; and are now threatening so to do; that the Shedds are nonresidents of the State of Indiana, and reside in the city of Chicago, Illinois, and have no right, title or interest whatever in the submerged land under the waters of Lake Michigan at the point where appellee is undertaking to extend its pipe line, or in and to the land along the shore of Lake Michigan on which said shanty is constructed and on which pipes are stored and on which appellee is throwing sand and earth taken from the channel as aforesaid; that said land is not the natural land, but the lake has been filled in by persons and corporations other than the Shedds; that the Shedds have never purchased the land or acquired title thereto from any person or corporation, or from the State of Indiana, have never had the same surveyed and the survey filed with the proper State authorities and the land so built into Lake Michigan belongs to the State of Indiana, and the Shedds have no right to the exclusive possession thereof, nor have they any right to interfere with appellee's possession thereof for the purposes afore-

said. Facts are averred to show that great damage would result from delay in issuing the temporary restraining order. Appellants answered the complaint by general denial and by several paragraphs of affirmative answer and also filed a cross-complaint. The cause was tried on the issues formed by the general denial, the second paragraph of answer and on the fifth paragraph of cross-complaint. Upon request the court made a special finding of facts and stated its conclusions of law thereon, which were in favor of appelleo.

Appellants' motion for a new trial was overruled and judgment was rendered against appellants on the conclusions of law perpetually enjoining them from interfering with appellee in the laying of its pipe lines into Lake Michigan as alleged in the complaint.

The errors assigned and relied on for reversal are the overruling of the demurrer to the complaint for insufficiency of the facts alleged to state a cause of action; error in each of the conclusions of law stated on the special finding of facts, and the overruling of appellants' motion for a new trial. The objections urged against the sufficiency of the complaint are in substance that it does not allege any located line or easement; does not describe or definitely locate the alleged easement or furnish the means of definitely locating the same or of ascertaining the shape, dimension, or position of the easement or right of way and contains no description of the lands over which the alleged way is granted; that it contains no allegation that an easement or right of way has been located or designated, or that a request has been made by appellee to appellants Shedd and Shedd, the owners of the servient estate, to select the location of the way for such easement and that they have failed to so do, or that they had desig-

nated an unreasonable location for the way, or that appellee had selected the route for the pipe line. On the other hand appellee insists that this is not an action to establish or locate an easement or to quiet title thereto but to enjoin the appellants from interfering with appellee's enjoyment of an easement which has been granted to it by appellants and which carries with it certain riparian rights.

An indefinite easement or right of way which is not specifically located and described is too indefinite to be established and protected by a

1. court of equity. Fox v. Pierce (1883), 50 Mich. 500, 15 N.W. 880; Bright v. Allan (1902), 203 Pa. St. 386, 53 Atl. 248; Thomas v. McCoy (1903), 30 Ind. App. 555, 56 N. E. 700; Ritchey v. Welsh (1898), 149 Ind. 214, 48 N. E. 1031, 40 L. R. A. 105; Liggett v. Lozier (1892), 133 Ind. 451, 32 N. E. 712. A complaint to enjoin encroachments upon or interference with an easement or right of way is insufficient when it does not furnish the means or data for entering a definite decree, if the facts alleged be admitted or proven, including a definite description as to dimensions and location of such way. To obtain injunctive relief the right to particular and definite way must be clear. Evansville, etc., R. Co. v. Butts (1901), 26 Ind. App. 418, 59 N. E. 1070; Price v. Bayless (1892), 131 Ind. 437, 31 N. E. 88; College Corner, etc., Co. v. Moss (1883), 92 Ind. 119, 123; Lenniger v. Wenrick (1884), 98 Ind. 596; Marion County Lumber Co. v. Tilghman Lumber Co. (1906), 75 S. C. 220, 55 S. E. 337; Fox v. Pierce, supra; Hagerty v. Lee (1889), 45 N. J. Eq. 1, 15 Atl. 399; Manbeck v. Jones (1899), 190 Pa. St. 171, 42 Atl. 536; Jones, Easements §§883, 884; 14 Cyc 1216-1218. When an un-

2. located right of way is granted, or reserved, the owner of the servient estate may, in the

first instance, designate a reasonable way, and if he fails to do so, when requested, the owner of the dominant estate may designate it. However, when the owner of the dominant estate or easement, designates the location of the easement, he is required to select a route that is reasonable as to both parties, in view of all the circumstances, and one that will not unreasonably interfere with the grantor, or owner of the servient estate, in the enjoyment of his property. When such way is once selected and located it can not be changed by either party without the consent of the other. *Thomas* v. *McCoy* (1903), 30 Ind. App. 555, 56 N. E. 700; *Ritchey* v. *Welsh, supra;* Jones, Easements §337.

The complaint does not allege any interference with that part of the way over which the pipe line was first laid to a point near the bank of the lake or Wolf River outlet. The interference is charged with the way over which appellee was seeking to extend its pipe lines from that point into the lake. The only allegation as to the location of this part of the way for the pipe line is that appellee procured a permit from the United States government to dredge a channel in Lake Michigan due north from the terminus of said pipe line near the shore, in which to lay the pipe and that they had dredged the channel to within thirty feet of the shore when appellants interfered with and stopped the progress of the work. The real estate over which the way was granted is not described, nor is it alleged that the way over which the line was to be extended into the lake had been located by any one, or that appellee had requested the Shedds to select the location and that they had failed or refused so to do, or that they had selected an unreasonable location, or that appellee had itself chosen the route

Appellee contends however, that as a riparian owner it had the right to extend its pipes into the lake at right angles from the lake shore, and that this right obviates the objections that might otherwise be successfully urged against the complaint. An easement in land bordering on a body of navigable water carries with it such riparian rights in the submerged lands between the shore and the navigable portion of such body of water as are appropriate and necessary to give effect to such easement. The portion of such submerged lands over which. riparian rights may be asserted, is as a general rule determined between adjoining property owners by extending lines from the water's edge at right angles to the prevailing shore line. *Clark* v. *Campau* (1869), 19 Mich. 325; *Hanford* v. *St. Paul, etc., R. Co.* (1890), 43 Minn. 104, 42 N. W. 596, 44 N. W. 596, 7 L. R. A. 722; *Northern Pine Land Co.* v. *Bigelow* (1893), 84 Wis. 157, 54 N. W. 496, 21 L. R. A. 776; *Newhaven Steamboat Co.* v. *Sargent & Co.* (1882), 50 Conn. 199, 47 Am. Rep. 632; *Delaware, etc., R. Co.* v. *Hannon* (1875), 37 N. J. L. 276. The complaint shows that appellants, Shedd and Shedd, are the owners of the land bordering on Lake Michigan between the part conveyed to appellee's predecessor and the lake. Some of the averments of the complaint are in a sense contradictory of the riparian rights of appellants, but appellee in its brief states that "Appellants are riparian owners and certain rights in the submerged lands are appurtenant to such ownership." Appellee also states that the contradictory averments were inserted in the complaint to raise an issue as to the right of appellee to store pipe and erect a tool shed near the shore, but that the issue was not tried and is not a question in the case. Therefore the averments of the complaint, as

well as appellee's admission, show that appellants are riparian owners of that portion of the lake front through which appellee claims the right to extend its pipe lines into the lake. The issue presented is not the right to lay a pipe line into the lake, for the right so to do is not controverted. The dispute is as to the location and direction of the pipe line from the point near the shore where the portion of the line first laid ended. The averments show that appellee's right to the easement was originally given by grant in a deed of conveyance from the Shedds to its predecessor. According to the allegations of the complaint the easement extended not only to the shore but out into the lake. Whatever right the Shedds had to extend such pipes into the lake was granted to appellee's predecessor and is now held by appellee under the grant. But aside from the theory of the complaint we are unable to see that the rights of a riparian owner, if such rights be conceded to appellee, aid the complaint. The right to extend the pipe line into the lake whether obtained by covenant or by virtue of riparian ownership, does not settle the question of the particular location of the easement. The location of the territory over which riparian rights may be asserted by extending lines out into the body of the water at right angles to the shore line is generally invoked to determine the dividing lines between adjoining riparian owners, and we are unable to find any authority for applying it to determine a dispute as to the particular location of an easement on the property over which it is granted in general terms. The deed contains provisions which confer the right, but does not definitely locate the pipe line. By the averments of the complaint appellants are shown to own and control the riparian rights appurtenant to the land over which the easement is granted subject only to the

dominant right of appellee to such easement. The rules for the location of an easement granted, but not definitely located, are applicable here. The rights of other riparian owners are not involved according to the averments of the complaint and the rules for locating riparian property are not applicable. The interested parties under such a grant may make any reasonable location of the 8. easement on the property over which it is to extend, so long as they do not encroach upon or interfere with other property. *Kinney* v. *Hooker* (1892), 65 Vt. 333, 336, 26 Atl. 690, 36 Am. St. 864.

Appellee in effect admits that the complaint is subject to the infirmities already pointed out but contends the defects are cured by the averments of the answer, or are rendered harm-9. less by the special findings. "When a pleading is tested by demurrer, it must stand or fall by its own averments. It can find neither weakness nor strength from other parts of the record." *Pittsburgh, etc., R. Co.* v. *Moore* (1899), 152 Ind. 345, 348, 53 N. E. 290, 44 L. R. A. 638. See, also, *Cole* v. *Gray* (1894), 139 Ind. 396, 399, 38 N. E. 856; *Runner* v. *Scott* (1898), 150 Ind. 441, 50 N. E. 479. Appellee relies on the cases of *Watkins* v. *Gregory* (1841), 6 Blackf. 113; *Wiles* v. *Lambert* (1879), 66 Ind. 494; and *Lux, etc., Stone Co.* v. *Donaldson* (1904), 162 Ind. 481, 68 N. E. 1014, but they give no support to the contention. They hold that the omission from a complaint of a material averment may be cured or rendered harmless by an admission of the adverse party in his answer. We hold the complaint in the case at bar insufficient, but the question remains as to whether by reason of the issues presented on the answer and cross-complaint, the error may be held harmless because of the special

finding of facts, the conclusions of law and the exceptions thereto.

Appellee contends that the overruling of a demurrer to a complaint is not material in an action where the court finds the facts and states conclusions 10. of law thereon, for the reason that an exception to the conclusions of law presents the same question as those arising on demurrer to the complaint. An exception to conclusions of law admits for the purpose of the exception that the facts within the issues have been fully and correctly found. *Kline* v. *Dowling* (1911), 176 Ind. 521, 96 N. E. 579; *Warrick* v. *Spry* (1912), 49 Ind. App. 327, 97 N. E. 361; *Wills* v. *Mooney-Mueller Drug Co.* (1912), 50 Ind. App. 193, 97 N. E. 449; *Myers* v. *Reynolds* (1911), 47 Ind. App. 233, 94 N. E. 345; *Hornaday* v. *Cowgill* (1913), 54 Ind. App. 631, 101 N. E. 1030, and cases cited. But it is not true that in every case where there is a special finding of facts that an exception to the conclusion of law renders a consideration of the complaint unnecessary. The findings may be outside the issues in which case they do not aid the complaint but must be disregarded. *Goodwine* v. *Cadwallader* (1902), 158 Ind. 202, 205, 61 N. E. 939; *Runner* v. *Scott* (1898), 150 Ind. 441, 442, 50 N. E. 479; *Shank* v. *Trustees, etc.* (1911), 47 Ind. App. 331, 85 N. E. 95, 93 N. E. 452; *Radebaugh* v. *Scanlan* (1908), 41 Ind. App. 109, 82 N. E. 544; *Fleming* v. *Greener* (1909), 173 Ind. 260, 267, 87 N. E. 719, 90 N. E. 72, 140 Am. St. 254, 21 Ann. Cas. 959. The special findings may show that the overruling of a demurrer to an insufficient paragraph of complaint or answer was harmless, where there is another good paragraph upon which the finding and judgment rest. *Radebaugh* v. *Scanlan, supra*; *Goodwine* v. *Cadwallader, supra*. Where the facts are fully and correctly found within the issues

an exception to the conclusions of law presents the same question as a demurrer to the complaint for insufficiency of the facts alleged to state a cause of action. *Campbell* v. *Smith* (1913), 180 Ind. 159, 161, 101 N. E. 89; *Judy* v. *Jester* (1913), 53 Ind. App. 74, 84, 100 N. E. 15; *Town of Cicero* v. *Lake Erie, etc., R. Co.* (1913), 52 Ind. App. 298, 308, 97 N. E. 389; *Muncie, etc., Traction Co.* v. *Citizens Gas, etc., Co.* (1913), 179 Ind. 322, 332, 100 N. E. 65.

Appellants claim that certain of the findings are outside of the issues because (1) the complaint does not describe the shape, dimensions or position of the easement, and (2) fails to show a request by the appellee for the location of the way and the refusal to grant it by appellants. We have held the complaint defective for the failure to make such averments, but now consider the question as affected by other pleadings. Issues were formed on the second paragraph of affirmative answer and on one paragraph of cross-complaint. It is averred in the answer, that appellants are the owners of all the natural land lying between the real estate conveyed and the shore of Lake Michigan, describing it as follows: "All that portion of lots two (2) and four (4), in section thirty-six (36), in township thirty-eight (38) north, of range ten (10), west of the second principal meridian, in Lake County, Indiana, lying northeasterly of the Baltimore and Ohio Railway, northwesterly from the center line of the outlet or mouth of Wolf River, and southeasterly from the premises enclosed and occupied by one Eggers." That on the north, said real estate borders on Lake Michigan, and on the east side thereof extends to the center line of Wolf River. It is further averred that shortly after the execution of the deed of conveyance, providing for an easement under said lands appellants "indicated,

told, notified, and pointed out to said Western Glucose Company, the site, place and location of said proposed easement, and right of way to be used by it in the erection and construction of said pipe lines under the lands of these defendants." That the line so pointed out to said company "was in a convenient place, extending in a straight line from plaintiff's plant, in a northerly direction to Lake Michigan, at a point and position west and westerly from defendants' said piers, docks and harbors;" that the location indicated and pointed out for the location of such easement was "in a place and position well and reasonably well adapted for the use and convenience of" said company. That appellee was not "granted any rights or privileges whatsoever to lay and place said pipe lines, or any part thereof, on or under" said real estate, at the place and location where it is seeking and attempting to lay them. That the place where appellee is seeking and attempting to lay said pipe lines is into Wolf River at a point near the south end of the piers and docks of appellants and that it is the intent and purpose of appellee to lay the pipes upon the bottom of the lake near and within about ten feet from appellants' piers and docks.

The fifth paragraph of cross-complaint contains substantially the same averments in this respect. These averments describe the real estate over which the easement was granted, allege that a reasonable and suitable route for the pipe line was pointed out and designated by appellants and state where it was located. They put in issue all the facts omitted from the complaint, for the omission of which we held it insufficient, unless it be an affirmative allegation that the Shedds located the pipe line east of their pier, and on this subject the answer and cross-

complaint state the negative of such averment, and charge that appellee intended to lay the pipes east of the pier. The finding of facts based on the affirmative allegations of the answer and cross-complaint is not outside the issues of the case. *Goodwine* v. *Cadwallader*, *supra*, 205; *Lux, etc., Stone Co.* v. *Donaldson, supra; Runner* v. *Scott, supra; Daly* v. *Gubbins* (1908), 170 Ind. 105, 108, 82 N. E. 659.

The court has found that the Shedds located the easement east of their pier. An examination of the briefs shows that the question of the particular pointing out and location of the easement was fully tried out by the court and that all the parties introduced much evidence on the subject. No objection to any of such evidence is shown in the motion for a new trial or pointed out in the briefs. There is no indication anywhere that appellants were surprised or unprepared to meet the issue, but the briefs show conclusively that the issue was as fully tried and determined as it could have been had the complaint contained the averment. The amendment of the complaint to supply the affirmative allegation that the Shedds located the easement east of their pier was such that the court could have allowed it to be made at any time during the proceedings and doubtless would have permitted it to be done on request. Section 405 Burns 1914, §396 R. S. 1881, provides that the court may at any time in its discretion direct "any material allegation to be inserted, struck out, or modified—to conform the pleadings to the facts proved when the amendment does not substantially change the claim or defense." In this case the pleadings, at least, in a negative way brought the question into the case and as already shown the question was tried and determined as though it were in issue. Section 700 Burns 1914, §658 R. S. 1881, provides that no judgment shall be

reversed for any defect contained in the pleadings "which by law might be amended by the court below, but such defects shall be deemed to be amended in the supreme court; nor shall any judgment be stayed or reversed in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below." These statutes are clearly applicable to the question of the location of the easement and for the purposes of this decision the complaint will be deemed amended in the particular mentioned. *Driscoll* v. *Penrod* (1911), 176 Ind. 19, 25, 95 N. E. 313; *Louisville, etc., Traction Co.* v. *Lottich* (1915), 59 Ind. App. 426, 106 N. E. 903, and cases cited; *Chicago, etc., R. Co.* v. *Gorman* (1915), 58 Ind. App. 381, 106 N. E. 897.

The finding cannot be aided by the conclusions of law, and to warrant a recovery every fact material to the plaintiff's cause of action must be found and stated, or must necessarily and clearly arise by inference from the facts so found and stated by the court. The failure to find a material fact is the equivalent of a finding against the party upon whom rests the burden of proving such fact. *Judah* v. *F. H. Cheyne Electric Co.* (1913), 53 Ind. App. 476, 483, 101 N. E. 1039; *Behler* v. *Ackley* (1909), 173 Ind. 173, 179, 89 N. E. 877; *Crawfordsville Trust Co.* v. *Ramsey* (1913), 55 Ind. App. 40, 100 N. E. 1049, 102 N. E. 282; *Bradway* v. *Groenendyke* (1899), 153 Ind. 508, 512, 55 N. E. 434; *Cleveland, etc., R. Co.* v. *Closser* (1890), 126 Ind. 348, 367, 26 N. E. 159, 22 Am. St. 593, 9 L. R. A. 754. The findings in the case cover the averments of the complaint and also include facts put in issue by the special answer and the cross-complaint, and those tried and determined as already shown.

Keeping these facts in mind we set out the substance of such findings as are necessary to a determination of the questions presented by the exceptions to the conclusions of law. In addition to the question already considered, those most strongly urged related to the pointing out and location of the pipe line, to the fouling of the water, and to the failure to make certain persons defendants to the suit, whom it is alleged were necessary parties to a full and complete adjudication of the questions at issue. It is found that Wolf River is the outlet of Wolf Lake into Lake Michigan; that the lands conveyed by Shedd and Shedd to appellee's predecessor, on November 12, 1906, lie along the west bank of Wolf River approximately one-half mile south of Lake Michigan; that the Shedds at that time were and have continued to be the owners of all the lands lying between the real estate so conveyed and the shore of Lake Michigan, containing about twenty-five acres; that the lands east of Wolf River are owned by the heirs of Caroline M. and Jacob Forsyth; that the United States government beginning in 1873 made several surveys of Wolf River and Wolf Lake in contemplation of a harbor on Lake Michigan at the mouth of Wolf River; that it was found to be feasible to establish a harbor, but on account of the cost, or for other reasons, no harbor was established; that neither Wolf River nor Wolf Lake is navigable water of the United States; that the land of the Shedds bordering on Lake Michigan is of the value of $5,000 per acre; that in 1883 the Shedds constructed a pier about 150 feet west of the northeastern boundary of said tract which extended into the lake 500 feet at right angles with the shore line; that about 1897 the Forsyths built a pier 150 feet east of the northwestern boundary of their lands, and the space between said piers

was afterwards known as Wolf River outlet or harbor and has been so known for twenty years; that said piers are 300 feet apart and the water between them varies in depth from one inch to ten feet; that the Forsyths have at times partly dredged the space between said piers at the mouth of Wolf River with a view of making a harbor, but it has never been of sufficient depth to admit vessels drawing water more than a depth of seven feet and the harbor is not navigable for lake vessels; that in 1895 the Shedds extended their pier an additional 500 feet into the lake; that Charles B. and Edward A. Shedd owned the real estate sold as aforesaid and are brothers and reside in the city of Chicago; that in making the sale of the land to appellee's predecessor, the Western Glucose Co., Charles B. Shedd conducted the negotiations and consummated the sale with said company which was represented by William E. O'Neil and Daniel B. Scully; that in the manufacture of its products appellee requires about three or four million gallons of pure cold water per day and one of the inducements to the purchase of said land was its close proximity to Lake Michigan; that during the negotiations for the purchase of said land Charles B. Shedd pointed out to Scully and O'Neil a right of way and easement from the land so purchased, to Lake Michigan, over which the pipe line was to be laid, which line extended to the water's edge of Wolf River outlet or harbor "and then on the easterly side of the pier erected by Shedd and Shedd and parallel therewith and through the water of Wolf River outlet or harbor, and on into Lake Michigan"; that the pointing out of such right of way for the pipe line was a part of the consideration and was one of the inducements, for the purchase of the site for the proposed plant; that in 1907 said plant or factory was

constructed and two pipe lines were laid about one foot apart from the plant northward to within 25 or 50 feet of the then ordinary water line of Wolf River outlet; that the pipes were laid in accordance with the terms of the grant and the purpose was known to the Shedds; that a catch basin was constructed twenty-five to fifty feet south of the ordinary water line of Wolf River harbor; that said basin was located forty feet east of a line parallel with and extended south of said pier; that the pipes were six feet below the surface of the ground where they entered the catch basin; that long after the completion of said pipe lines, Charles B. Shedd pointed out to William E. O'Neil, one of the directors of said company, a line extending from said catch basin out into Lake Michigan between said piers and parallel with and east of the pier erected by the Shedds as aforesaid; that in 1907, said company entered into a contract with one Johnson to extend said pipe line parallel with and about fifteen feet east of the Shedd pier which contract was duly authorized by the board of directors of said company, of which Charles B. and Edward A. Shedd were members and they were present and voted in favor of the contract; that on account of a shortage of funds and the lateness of the season the contract was afterwards cancelled; that thereafter the name of said company was duly changed to the American Maize Products Company; that the plant was put in operation in the fall of 1907, and the outfall therefrom passed through the outfall pipe so constructed "and the company dug and maintained a small ditch or sluice way from the catch basin to the water's edge a distance of about forty or fifty feet, so that the outfall could reach the water at a point between the two piers", all of which was done with the knowledge, consent and approval of the

Shedds; that the outfall from the plant has continued to pass through said pipe and on through Wolf River harbor into Lake Michigan; that in 1909, after the granting of the temporary restraining order the outfall pipe was extended 200 feet from the catch basin and emptied the outfall directly into Wolf River harbor about 100 or 125 feet from the water's edge; that at no time prior to the beginning of this suit in September, 1909, did the Shedds in any manner express to appellee or any of its officers or agents any objection whatever to the emptying of said outfall as aforesaid; that nothing but the outfall from said plant has passed through said pipes; that prior to early winter of 1910, the outfall polluted the water and created a disagreeable odor in the vicinity; that no person lives in the vicinity of said Wolf River harbor except one John Cuneo, a fisherman, who erected a shanty on the lands of appellants and paid a rental therefor and for the privilege of fishing along the piers; that in the fall of 1910, appellee installed a plant at a cost of $25,000, consisting of septic tanks to precipitate the solids from said outfall before the same enter into the pipes which conduct it into Wolf River harbor; that as a temporary arrangement when the plant was constructed, appellee took water from Wolf Lake but in the summer of 1909 the water from the lake became unfit for the purpose of manufacturing food products and appellee contracted with the Calumet Construction Company to extend the intake pipe from the catch basin 2,000 feet into Lake Michigan, at right angles with the shore line of the lake and about fifteen feet east of and parallel with the Shedd pier, and to extend the outfall pipe 200 feet; that in 1908, the Shedds disposed of their interests in the company and were not at this time interested therein. "That neither before entering in-

to the contract with the Calumet Construction Company, nor at the time of entering into said contract for the extension of said pipe lines did the plaintiff make any demand of the defendants Shedd and Shedd or either of them or upon either of them for the location of the remaining portion of the easement for the said pipe lines, nor has any such demand been made at any time, either before the beginning of this action or since the beginning of this action, nor before the beginning of the work in 1909 to extend said pipe lines by plaintiff as aforesaid." That the contractor obtained permission from the Shedds to store pipe on their land to be used in the extension of said pipe line, and was then informed that the Shedds desired the line laid west of their pier; that this fact was communicated to appellee; that the Calumet Construction Company procured from the United States government a permit to lay said pipes in the bed of the lake; that in September, 1909, said construction company began dredging and before the work was completed was notified by the Shedds to stop the work and a similar notice was served on appellee; that the Shedds tendered appellee a right of way for the pipe line west of the pier which it refused to accept except on the condition that the Shedds pay the additional cost of constructing the line at that place, and this they refused to do.

The finding here states details of the interference and efforts to adjust differences, which were unsuccessful and shows that the work of dredging already done would be lost by the action of the water if the work was delayed, and appellee would suffer irreparable damage, the details of which are stated but omitted here.

The deed of conveyance from the Shedds for the factory site among other provisions contains the

following: "The grantors being the owners of the land lying north and northeast of the land herein conveyed and lying between said land and Lake Michigan subject to public highway, pipe line rights and the different railroad companies whose railroads pass between the land herein conveyed and Lake Michigan do hereby grant an easement to the grantee its successors and assigns for a right of way under said land to connect the land herein conveyed with Lake Michigan by two pipe lines of iron, vitrified tile or cement, said pipes to be not less than twenty-four (24) inches in diameter, and to be laid so that the tops of said pipes shall be at least one (1) foot below Chicago city *datum*. It is further agreed that in the event of the grantors wishing to change or lower the grade of said pipes hereinbefore referred to, they may do so provided said change is made entirely at their own expense and in a manner that will not unreasonably interfere with the continuous operation of the factories or plants of the grantee or its assigns. * * * It is further understood and agreed that no foul or polluted water shall be emptied into Wolf River or Lake or anything that will contaminate the waters thereof."

It is further found that on September 29, 1909, appellee applied to the Lake Superior Court for a temporary restraining order against appellants and certain alleged employes and agents, to prevent their interference with the laying of said pipes east of the Shedd piers, which order was issued by the court without notice, and the day was fixed for the hearing on the temporary order; the motion to dissolve the temporary order was overruled and the order was thereafter made permanent; that after the restraining order was issued appellee by and through said construction company proceeded to

and did lay said pipe line as above indicated; that the pipes were iron thirty-six inches in diameter, in ten feet joints and were laid at a depth of about nine and one-half feet below the surface of the water and two and one-half feet below the bed of Wolf River harbor, and about ten feet east of the Shedd pier. "The plaintiff in the construction of said pipe lines, as hereinbefore found, did not extend the pipe lines in the same direction and course as followed by the pipe lines as constructed in the year 1907, but the course and direction of said pipe lines were changed by plaintiff to a more easterly direction and extended through said Wolf River harbor and to the east of the piers of the defendants Shedd and Shedd; that the line and course followed by the plaintiff in the construction of said pipe lines in 1907 when extended northward toward Lake Michigan from the point where the work was stopped at the catch basin in 1907, extended, would be and lie across the southerly end of the pier, and onto the westward of said pier a distance probably of sixty feet or more at the outlet in Lake Michigan and would cross said pier at the extreme south end." That the laying of said pipes would interfere with dredging Wolf River harbor to a depth suitable for lake vessels, but the same could be lowered at a cost of one dollar per lineal foot; that it would cost $11,000 more to lay the pipe on the line requested by the Shedds west of the pier than to lay it east of the pier on the line where it was laid. "That the pouring of said outfall waters into the waters of said Wolf River outlet, through said outfall pipe, has rendered said Wolf River outlet unfit for the habitation of fish, and has completely destroyed said Wolf River outlet as a fishing place, and has driven the fish out of said Wolf River and harbor, and has destroyed Wolf River outlet and harbor as a fishing

place. * * * The court finds that the mouth of Wolf River at the point where it empties into Wolf River harbor and for several hundred feet southward has been filled with beach sand by the action of the lake waters, and no water runs from Wolf River into the lake except at such times in the year when the waters in Wolf Lake are very high, when Shedd and Shedd and other landowners in the community would open a channel into the harbor for the overflow water to pass out; then, as soon as the overflow water was relieved and ceased to flow, the action of the water of the lake would close the channel."

That prior to emptying said outfall into the waters of Wolf River outlet the place was a habitat for various kinds of fish; that the Shedds leased said piers for a fishing place in Wolf River harbor; that since the construction of said pipe lines appellee continued to empty the outfall from said factory through the pipes into Wolf River outlet and harbor and will continue so to do unless restrained from so doing; that the pipes were laid after the temporary injunction was issued and the same can be removed at a cost of one dollar per lineal foot; "That the position and location of said pipe lines, as laid by plaintiff, as hereinbefore found, in said Wolf River outlet and harbor, will prevent the further dredging and improvement of said harbor, along the said piers belonging to said defendants Shedd and Shedd; said pipe lines will also prevent the use of said piers for shipping purposes, until the same are in some manner removed or lowered from their present position, with boats drawing more than seven feet of water."

The finding also shows that in 1888, the several owners of the land on both sides of Wolf River outlet or harbor, to settle a dispute as to the boundary

between the land on the east and the west thereof, mutually conveyed to each other a strip of land approximately 150 feet wide on each side of the dividing line, and dedicated the same as a waterway and harbor 300 feet wide, and in said instrument provided: "the said parties do hereby * * * mutually grant unto each other, and to the United States of America, and to the State of Indiana, that the said strip of land 300 feet wide from the said Baltimore, Ohio & Chicago Railroad to Lake Michigan be, and is hereby dedicated to public use as a public highway to be a waterway forever; said strip being by the parties hereto agreed to be the due and proper outlet and mouth of Wolf River, and a harbor upon Lake Michigan * * * * ", and further provided that such channel 300 feet wide should extend into Lake Michigan at right angles to the shore line and that all the land west of the center line of such 300 feet channel shall belong to Morgan & Smith and their assigns, who then owned the land now owned by the Shedds, and that the land east of such center line shall belong to Caroline M. Forsyth, her heirs and assigns. The instrument further provides: "if at any time either of said parties or their assigns shall desire to make a channel of the full width of three hundred (300) feet the party so desiring such channel to be made or cleared out, may do so at the expense of the party so desiring, provided the party so clearing or widening the channel to three hundred (300) feet, shall protect the widened channel from being filled up by proper breakwaters."

It is contended that the findings to the effect that the pointing out of the way for the pipe line from the factory to Lake Michigan was an inducement to the purchase of the factory site and entered into the consideration therefor, are

outside the issues and can not be considered for that reason and for the further reason that such facts tend to vary the terms of the deed containing the grant of the easement; that all prior negotiations are merged in the written instrument. An easement is an interest in land, and a deed by which it is granted, like other written contracts, becomes the repository of the entire agreement, and in the absence of fraud or mistake, can not be varied by parol evidence. But notwithstanding this general rule the actual consideration may be shown by parol evidence even though it differs from that expressed in the instrument. In this instance the pointing out of the location for the proposed pipe line and the accessibility of the water needed in manufacturing the products of the factory, were important considerations, and it was proper to hear evidence relating thereto and to find the facts accordingly. The pointing out of the location for the pipe line in no way contradicted the deed, but only gave practical effect to the easement granted by it, in general terms, but not definitely located by its provisions. *Indianapolis Southern R. Co.* v. *Wycoff* (1912), 51 Ind. App. 159, 95 N. E. 442, and cases cited; *Steele* v. *Michigan Buggy Co.* (1912), 50 Ind. App. 635, 638, 95 N. E. 435. In *Kinney* v. *Hooker, supra,* the court said: "When a way is not located by the grant, the parties may locate it by parol agreement at any point on the premises over which the right is granted, and evidence of such agreement is admissible and does not contradict or vary the deed, provided the way is located within the boundaries of the land over which the right is granted." The court having found that the pipes were laid on the line pointed out by the Shedds, the fact of inducement is immaterial and does not affect any substantial right of either of the parties.

We have already decided that the issues formed on the special answer and cross-complaint and the questions tried by the parties as though in issue, authorized the finding of facts made by the court. The findings show that during the negotiations for the sale of the factory site, appellants, the Shedds, pointed out the line of the proposed easement, and that subsequent to the purchase of the land and the laying of the pipe lines to the catch basin, they again pointed out such way for the pipe line, and in each instance located it east of the Shedd pier, substantially in the place where the pipes were afterwards laid. The findings also state that in extending the pipes from the catch basin out into the lake in 1909, the course and direction of the lines were changed to a more easterly course than that indicated by extending the line in the same direction the pipes were laid from the factory to the catch basin in 1907, and that they extended through Wolf River harbor and to the east of the Shedd pier, and that the pipe line if extended in the same direction as that first laid would be west of said pier. It is earnestly contended that this shows a change in the location of the easement by appellee and that for such reason it should not have obtained the relief granted by the trial court. The findings are to be read as a whole and fairly construed as already indicated in this opinion. They do show that the pipe would have been laid west of the pier if the line had not been changed from the direction indicated by the location of the pipe laid from the factory to the catch basin, but they do not show that it was changed from the line originally pointed out and designated by the Shedds. It is expressly stated in the finding that on two occasions, one before and one after the sale of the land, the Shedds pointed out to a representative of

appellee's predecessor the way for the easement on the east side of the Shedd pier. Having once located it, neither party to the transaction could change the location without the consent of the other. *Ritchey* v. *Welsh, supra*, 221; *Onthank* v. *Lake Shore, etc., R. Co.* (1877), 71 N. Y. 194, 27 Am. Rep. 35; *Winslow* v. *City of Vallejo* (1906), 148 Cal. 723, 84 Pac. 191, 113 Am. St. 349, 58 L. R. A. (N. S.) 851, 7 Ann. Cas. 851; *Jennison* v *Walker* (1858), 77 Mass. 423.

It is found that neither before entering into the contract with the Calumet Construction Company nor at any time after entering into said contract for the extension of said pipe lines, did appellee demand or request the Shedds to locate the remaining portion of the easement. In effect it is contended that these findings show that the Shedds were deprived of their legal right to locate the easement and that appellee wrongfully located that portion of it extending from the catch basin out into the lake. These findings are not in conflict with those which show that prior to the time of letting the contract to the Calumet Construction Company in 1909, the Shedds had located not only the portion of the line actually laid in 1907, but the remaining portion extending from the catch basin out into the lake. Having once located the whole easement, the mere fact of delay in completing the line would not necessitate a relocation of the part not laid until a later date. There is no finding of any agreement changing the location originally pointed out, nor any showing that would give to appellants, the Shedds, the right to again locate the easement extending from the catch basin out into the lake. From this, it follows that the findings on the subject of the location of the easement support the conclusions of law.

It is also contended that the findings show that appellee created and continued a nuisance by emptying its outfall into Wolf River outlet, and that for this reason it was not entitled to the injunctive relief granted by the court's decree. Under the court's finding, appellee laid its pipe line in the location designated by the Shedds. The finding also shows that from the beginning of the operations of the plant in 1907, appellee emptied the outfall in the space between the piers leading out into Lake Michigan, first by a ditch from the catch basin, and afterwards by a pipe, and that appellants, the Shedds, with full knowledge thereof made no objection or complaint on account of the alleged pollution until this suit was begun. There is no showing that the laying of the pipes from the catch basin in any way increased the pollution of the water or rendered it more injurious, but the findings do show that in the fall of 1910 appellee installed an expensive system of septic tanks to avoid polluting the water. The special finding of facts made by the court was not filed until November 18, 1911, and the final judgment was rendered December 1, 1911. In *City of Logansport* v. *Uhl* (1885), 99 Ind. 531, 50 Am. Rep. 109, the Supreme Court quoted with approval from 1 High, Injunctions §884, "One who has by his own acts consented to or acquiesced in the use of water in a particular manner, will be estopped from afterwards enjoining its use in that manner." In the same case the court on page 540 said: "This doctrine of acquiescence as a *quasi* estoppel is one of general application in proceedings to restrain the wrongful acts of another, and to which effect has been given in numerous cases arising out of controversies concerning the use, or right to use, water in flowing streams. But to make acquiescence ef-

fective to such an extent, it must necessarily have been voluntary, and with knowledge of the wrongful acts complained of, and of their probable injurious consequences." In 1 High, Injunctions (4th ed.) §756, it is said: "Long continued acquiescence in the erection of works which it is afterwards sought to enjoin as a nuisance may constitute a bar to relief. And it may be asserted as a rule that long delay upon the part of plaintiff who seeks to enjoin a nuisance will afford sufficient reason for refusing him relief in equity. The rule is extended even further, and it is held that one party may so encourage another in the erection of what he afterward complains of as a nuisance, as not only to deprive the aggrieved party of the right to equitable relief, but to give the adverse party a right to invoke the aid of equity to restrain proceedings at law for the recovery of damages resulting from the alleged nuisance." As bearing by analogy on the question, see, also, *McClaren* v. *Jefferson School Tp.* (1907), 169 Ind. 140, 145, 82 N. E. 73, 13 L. R. A. (N. S.) 417, 13 Ann. Cas. 978, and cases cited; *Porter* v. *Midland R. Co.* (1890), 125 Ind. 476, 478, 25 N. E. 556, and cases cited; *Loy* v. *Madison, etc., Gas Co.* (1901), 156 Ind. 332, 338, 58 N. E. 844; *Board, etc.* v. *Plotner* (1897), 149 Ind. 116, 121, 48 N. E. 635; *Barnard* v. *Sherley* (1893), 135 Ind. 547, 568, 34 N. E. 606, 35 N. E. 117, 41 Am. St. 454, 24 L. R. A. 568.

In determining the correctness of appellants' contention in regard to the fouling of the water, it is important to keep in mind the issues. Appellee brought suit to enjoin appellants from interfering with the laying of the pipes east of the Shedd pier. Appellants seek to prevent the granting of the injunction by showing that the outfall from the fac-

tory has fouled, and will continue to pollute the water and make it offensive. On the facts as found, appellants are placed in the position of asking the court to deny appellee the right to lay its pipes in the place designated by them, because appellee, for two years with the knowledge and acquiescence of appellants, has fouled the water of Wolf River outlet to the extent shown by the findings, but without showing that the laying of the pipes will make the water more injurious or offensive. The right to the easement is derived from the deed, as already shown, and its definite location was fixed by the Shedds pointing out and locating it east of the pier. As between appellee and the Shedds, the facts and circumstances show such acquiescence in the discharge of the refuse from the factory into Wolf River outlet, as to deprive them of any right they might otherwise have had (which we do not here determine) to object to the laying of the pipes east of the Shedd pier because of the effect of the refuse from the factory on the water. In arriving at this conclusion it is not necessary for us to determine, and we do not decide, what right appellants, or others, may have to relief from the maintenance or continuance of a nuisance by the alleged pollution of the water. The contention that the finding shows the creation and continuance of a nuisance, if conceded to be correct, can not avail appellants under the issues and the facts shown by the findings. The question of a public nuisance or of appellants' right to relief therefrom because of special damages is not involved here. The questions presented relate to contract rights and the conduct of the parties in relation thereto. The findings support the conclusions of law stated thereon in favor of appellee.

It is also contended that the judgment is contrary

to law because the owners of the land east of Wolf River outlet were not permitted to intervene; that the Forsyths were necessary parties to a full and complete adjudication of the issues of the case. This contention is based on the interest in the space between the piers conveyed to Oliver O. Forsyth, *et al.*, by deed as stated in the findings. Appellants contend that they could not themselves lay the pipes in said space and that appellee, their grantee, can not do so without the consent of the Forsyths.

The findings show that the owners of the land on either side of the piers had the right to dredge out the entire space between the piers for the purpose of making a harbor suitable for lake-going vessels; that the Forsyths had previously done some dredging, but the harbor had not been deepened to accommodate vessels drawing water to a depth of more then seven feet, and is not now "navigable for lake vessels"; that the pipes have been laid to a depth of nine and one-half feet below the surface of the water, and two and one-half feet below the present bed of the harbor; that to make the harbor suitable for general use by lake vessels it would be necessary to dredge it to a depth of from twenty-two to twenty-five feet; that the pipe lines as laid would prevent dredging along the Shedd pier but they could be lowered at a cost of one dollar per lineal foot. The findings also show that it is provided in the deed from Shedds to appellee's predecessor that if the grantors wish to "change or lower the grade of said pipes * * * they may do so provided said change is made entirely at their own expense and in a manner that will not unreasonably interfere with the continuous operation of the factories or plants of the grantee or its assigns." The findings also show that it is practicable to

dredge the harbor to a depth suitable for general use by lake vessels, but there is no showing that the Forsyths or any one else having the right so to do, has recently made any effort to dredge the harbor, or is proposing now, or at any time in the future, to dredge it to such a depth that appellee's pipes will become an obstruction. The pipes are laid on the property of the Shedds in which the owners of the Forsyth land have no interest except the right to dredge and make a harbor for general use. It can not now be known from the showing made that the pipes will ever become an obstruction. Until the pipes interfere with some right granted the Forsyths by the Shedds, the former have no cause of complaint against the latter. There is no present injury or such invasion of a right as will create a cause of action. Pipes laid two and one-half feet below the bed of the harbor can not interfere with the rights of any one so long as the harbor is maintained in its present condition. The presence of pipes that can be removed or lowered is not a denial of the right to dredge the harbor. *New York, etc., R. Co.* v. *Hamlet Hay Co.* (1898), 149 Ind. 344, 349, 47 N. E. 1060, 49 N. E. 269; *Sherlock* v. *Louisville, etc., R. Co.* (1888), 115 Ind. 22, 38, 41, 17 N. E. 171; *Reasoner* v. *Creek* (1885), 101 Ind. 482, 484; 1 High, Injunctions (4th ed.) §861

If the owners of the land east of the piers undertake the work of dredging the harbor to a depth below the level of the pipes, and the Shedds or their grantees, fail or refuse to remove or lower the pipes so that they will not interfere with such work, a question may then arise quite different from that now under consideration. Section 273 Burns 1914, §272 R. S. 1881, provides that: "The court may determine any controversy between the parties before it, when it can be done without prejudice to

the rights of others or by saving their rights; but when a complete determination of the controversy can not be had, without the presence of other parties, the court must cause them to be joined as proper parties." The controversy regarding the location of the pipe line on the facts presented is between appellee and the Shedds, and can be fully adjudicated without in any way affecting the property or rights of the Forsyths. In executing the deed to appellee's predecessor, appellants, the Shedds, seem to have contemplated that they or their assigns, might at some time desire to lower the pipes and accordingly reserved such right, and stipulated the conditions under which the work might be executed. This provision was consistent with the right previously granted the owners of the Forsyth land and being inserted in the deed was doubtless intended to provide for the emergency, if it arose, and likewise to be notice to purchasers of the servient estate over which the easement extended, if the land should be alienated. In the case of *Gale* v. *Frazier* (1886), 4 Dak. 196, 30 N. W. 138, the supreme court of Dakota considered the question of necessary parties, under a statute fully as liberal as that of Indiana, and said a necessary party has such an "interest in the subject-matter in litigation, and of such a direct and immediate character, that she would gain or lose by the direct legal operation and effect of the judgment" rendered. The Forsyths will not lose or gain in a legal sense by the judgment in the case at bar against the appellants. The rights of appellee as against the appellants may be fully determined without the Forsyths being made parties to the suit. The judgment is not therefore erroneous because they have not been made parties. Pomeroy, Code Remedies (3d ed.) §418. *Melvin* v. *Chancy* (1894), 8 Tex. Civ. App. 252, 28 S. W.

241; *First Nat. Bank* v. *Henry* (1900), 156 Ind. 1, 6, 58 N..E. 1057; *Larue* v. *American, etc., Engine Co.* (1911), 176 Ind. 609, 613, 96 N. E. 772; *Adams* v. *Ohio Falls Car Co.* (1892), 131 Ind. 375, 379, 31 N. E. 57.

It is also contended that the facts found do not show that appellee is entitled to injunctive relief; that it has an adequate remedy at law. The facts show the right to the easement to be unquestioned; that appellee undertook to lay the pipe on the line designated by the Shedds and had incurred great expense in so doing; that the work already done when appellants interfered would be lost by the action of the water in filling up the channel dredged for the pipes. To deny a party injunctive relief it is not sufficient to show that he has a legal remedy. If the remedy at law is not as prompt, practical, efficient and adequate, as that afforded by equity, the court may grant the injunction. *Cincinnati, etc., R. Co.* v. *Wall* (1911), 48 Ind. App. 605, 609, 96 N. E. 389; *First Nat. Bank* v. *Savin* (1911), 47 Ind. App. 266, 272, 94 N. E. 349; *Wabash R. Co.* v. *Engleman* (1903), 160 Ind. 329, 66 N. E. 892.

Other minor questions are suggested and discussed, but they are not of controlling effect. The court did not err either in overruling the motion for a new trial or in the conclusions of law. There is evidence to support the findings, and the facts found warrant the decree rendered by the trial court. Judgment affirmed. Hottel, C. J., Caldwell, Ibach, Moran and Shea, JJ., concur.

NOTE.—Reported in 108 N. E. 610. Easements in private ways and the rights and obligations of the parties, see 95 Am. St. 318. Location of indefinite right of way by parties interested, see 1 Ann. Cas. 681. See, also, under (1, 5) 14 Cyc 1221; (2, 3) 14 Cyc 1203; (4, 8) 14 Cyc 1205; (6) 14 Cyc 1201; (9) 31 Cyc 322; (10) 3 C. J. 903-906; 2 Cyc 717; (11) 3 Cyc 444; (12) 38 Cyc 1964; (13) 38 Cyc 1985; (14) 17 Cyc 653; (18) 22 Cyc 771.